**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**ELIZABETH V. MEJIA,** *as Administrator of the Estate of Maximiliano Saban,* **and ELIZABETH V. MEJIA,** *Individually,*

**Plaintiff,**

**- against -**

**O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC**,

**Defendants.**

---

**O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,**

**Third-Party Plaintiffs,**

**- against -**

**SESI CONSULTING ENGINEERS, P.C., KENNETH J. QUAZZA, P.E., NEW GENERATIONS MASONRY, MG COMMERCIAL CONCRETE, BONDED CONCRETE, INC.,**

**Third-Party Defendants.**

---

**18CV6483 (LMS)**

**DECISION**

---

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.**[1]

Currently before the Court is Plaintiff's motion for this Court to apply Connecticut law to her wrongful death cause of action. ECF No. 85.[2] Third-Party Defendants New Generations Masonry ("NGM") and MG Commercial Concrete's ("MG") have cross-moved for the Court to find New York law applicable to Plaintiff's wrongful death cause of action. ECF No. 95. All

---

[1] On May 29, 2019, the parties consented to the undersigned's exercise of jurisdiction over this matter pursuant to 28 U.S.C. § 636(c). ECF No. 101.

[2] Citations to "ECF" refer to the electronic docket associated with this case.

other Defendants and Third-Party Defendants oppose Plaintiff's motion.  ECF Nos. 93-97, 99-100.  For the following reasons, Plaintiff's motion is **DENIED,** NGM and MG's cross-motion is **MOOT,** and New York law is applicable to Plaintiff's wrongful death claim.

## I.    BACKGROUND[3]

### A.    The Pleadings

On July 18, 2018, Plaintiff Elizabeth V. Mejia, as administrator of the estate of Maximiliano Saban ("Decedent"), and in her individual capacity, commenced the instant law suit against Defendant's O'Neill Group-Dutton, LLC ("O'Neill") and Onekey, LLC ("Onekey").  ECF No. 1.  On August 23, 2018, Plaintiff filed an Amended Complaint against the same Defendants alleging the following six causes of action:  (1) negligence; (2) violation of New York Labor Law ("NYLL") § 200; (3) violation of NYLL § 241(6); (4) violation of NYLL § 240(1); (5) wrongful death; and (6) loss of consortium.  ECF No. 12, Amended Complaint ("Am. Compl.").

In the Amended Complaint, Plaintiff alleged that she was the wife of Decedent and that both she and the Decedent were citizens of Connecticut.  Am. Compl. ¶¶ 1-3.  O'Neill owned real property, including the construction site at One Dutchess Avenue in Poughkeepsie, New York.  Id. ¶ 16; ECF No. 29, O'Neill/Onekey Answer ¶ 9.  Plaintiff alleged that O'Neill "operated, maintained, controlled, and managed" the property and construction site.  Am. Compl. ¶ 17.[4]  The construction project was for the development of "mixed-use commercial and living

---

[3] This case is in the early stages of discovery.  The following facts are taken from the pleadings filed in this case.  To the extent the allegations are disputed, the Court has noted same.

[4] Defendants O'Neill and Onekey deny this allegation.  O'Neill/Onekey Answer ¶ 10.

space." Am. Comp. ¶¶ 13, 18.[5] Decedent was employed by MG to perform work at the construction site. ECF No. 17, Third-Party Complaint ("TPC") ¶ 32; ECF No. 72, NGM/MG Answer ¶ 32.[6] O'Neill hired Onekey to be the construction manager for the construction project. Am. Compl. ¶ 18; O'Neill/Onekey Answer ¶ 11. Plaintiff alleged that O'Neill and Onekey "contracted for but did not direct or control the work at the construction site." Am. Compl. ¶ 19.[7] Onekey operated, managed, maintained, inspected, and controlled the construction site. Id. ¶ 20; O'Neill/Onekey Answer ¶ 13. Plaintiff alleged that on or before August 3, 2017, O'Neill and Onekey "erected a concrete stacked block wall on the west side of building D surcharge soil pile." Am. Compl. ¶ 21.[8] Plaintiff further alleged that on August 3, 2017, the "retaining wall failed and collapsed, causing serious injuries, conscious pain and suffering[,] and the death of [the Decedent], who was a laborer at the [construction site]." Am. Compl. ¶ 22.[9]

On September 6, 2018, O'Neill and Onekey filed a third-party complaint against Sesi Consulting Engineers, P.C. ("Sesi"), Kenneth J. Quazza, P.E. ("Quazza"), NGM, MG, and Bonded Concrete, Inc. ("Bonded") alleging various theories of third-party liability including,

---

[5] Defendants O'Neill and Onekey characterize the construction project as one for the construction of "residential buildings." O'Neill/Onekey Answer ¶ 11.

[6] In their Answer, Defendants NGM and MG brought one counterclaim against Onekey (NMG/MG Answer ¶¶ 117-120), as well as one cross-claim against Sesi, Quazza, and Bonded. Id. ¶¶ 121-22. Onekey and O'Neill responded to NGM and MG's conterclaim. ECF No. 92.

[7] Defendants O'Neill and Onekey deny this allegation, but admit that they contracted for work at the construction site, which involved the erection of one or more buildings or structures. O'Neill/Onekey Answer ¶ 12.

[8] Defendants O'Neill and Onekey deny this allegation as to Onekey and deny having knowledge or information sufficient to form a belief as to the truth of the allegation as to O'Neill. They admit that Onekey erected a concrete stacked block wall on the west side of building D surcharge soil pile. O'Neill/Onekey Answer ¶ 14.

[9] Defendants O'Neill and Onekey deny this allegation. O'Neill/Onekey Answer ¶ 15.

inter alia, common law and contractual indemnification and/or breaches of contract, apportionment, and contribution. See generally TPC. Sesi provided engineering and design services in connection with the construction project. TPC ¶ 10; ECF No. 38, Sesi/Quazza Answer ¶ 10.[10] Quazza was an employee or principal of Sesi and was the professional engineer in charge of the project services provided by Sesi. TPC ¶ 15; Sesi/Quazza Answer ¶ 15. NGM was retained to provide concrete work for the project. TPC ¶ 23; NGM/MG Answer ¶ 23. Plaintiff alleged that Bonded provided pre-cast concrete blocks for use at the construction site. TPC ¶ 40.[11]

### B.    The Parties' Domiciles

Plaintiff alleged that O'Neill is and was a foreign limited liability company or other business entity organized and existing under the laws of New Jersey, maintained its principal place of business in New Jersey, and was authorized to conduct business in New York and did conduct business in New York. Am. Compl. ¶¶ 5-8. O'Neill admits the allegations, except it denies that it was a foreign limited liability company or other business entity organized and existing under the laws of New Jersey. O'Neill/Onekey Answer ¶¶ 2-3. In its third-party complaint, O'Neill alleges that it was a domestic limited liability corporation organized and existing under the laws of New York. TPC ¶ 2.

---

[10] Defendants Sesi and Quazza bring two "crossclaims" against O'Neill, Onekey, NGM, MG, and Bonded. Sesi/Quazza Answer pp. 11-12. They also deny "each and every allegation contained in Co-Defendants' Crossclaims." Id. at p. 12. O'Neill and Onekey answered the "cross-claims." ECF No. 91. The undersigned notes that Sesi and Quazza's claims against O'Neill and Onekey should have been labeled as "counterclaims."

[11] Bonded denies knowledge or information sufficient to form a belief as to the truth of this allegation. ECF No. 35, Bonded Answer ¶ 40.

In its Answer, Bonded raised four counterclaims against O'Neill and Onekey (id. ¶¶ 153-164), as well as four cross-claims against the other Third-Party Defendants. Id. ¶¶ 165-176. O'Neill and Onekey responded to Bonded's counterclaims. ECF No. 90.

Plaintiff further alleged that Onekey is and was a foreign limited liability company or other business entity organized and existing under the laws of New Jersey, was authorized to conduct business in New York and did conduct business in New York, and maintained its principal place of business in New Jersey. Am. Compl. ¶¶ 9-12; O'Neill/Onekey Answer ¶¶ 4,6. Onekey denies having knowledge or information sufficient to form a belief as to the allegation of whether it was and is an entity doing business in New York. O'Neill/Onekey Answer ¶ 5. In its third-party complaint, Onekey alleges that it is a foreign limited liability corporation organized and existing under the laws of New Jersey and authorized to do business in New York. TPC ¶ 3.

Sesi is and was a foreign professional corporation organized and existing under the laws of New Jersey, was authorized to do business in New York, supplied goods and services in New York, and maintained its place of business in New Jersey. TPC ¶¶ 4, 8, 9; Sesi/Quazza Answer ¶¶ 4, 8, 9.

Quazza is and was a natural person and resident of New Jersey, as well as a licensed professional engineer under and by the laws of New York, and continues to provide professional engineering services in New York. TPC ¶¶ 11, 13, 14; Sesi/Quazza Answer ¶¶ 11, 13, 14.

NGM is and was a limited liability company organized and existing under the laws of Connecticut, did and continues to do business in New York, continues to supply goods or services in New York, and continues to maintain a place of business in Connecticut. TPC ¶¶ 16, 17, 20-22; NGM/MG Answer ¶¶ 16, 17, 20-22.

MG is and was a limited liability company organized and existing under the laws of Connecticut, did and continues to do business in New York, continues to supply goods or services in New York, and continues to maintain a place of business in Connecticut. TPC ¶¶ 25, 29-31; NGM/MG Answer ¶¶ 25, 29-31.

Bonded is and was a domestic corporation organized and existing under the laws of New York, continues to do business in New York, continues to supply goods or services in New York, and continues to maintain a place of business in New York. TPC ¶¶ 33, 37-39; Bonded Answer ¶¶ 33, 37-39.

### C. Relevant Procedural History

On February 11, 2019, this case was referred to the undersigned by the Honorable Kenneth M. Karas for general pre-trial purposes. ECF No. 56. On March 18, 2019, the parties appeared before the undersigned for an initial conference. At that conference, the choice-of-law issue was raised by the parties for the first time and the undersigned directed the parties to bring the issue to Judge Karas' attention in accordance with his rules. See Docket Sheet, Minute Entry dated 3/18/2019. The parties then requested a pre-motion conference before Judge Karas. ECF Nos. 73-77. Thereafter, Judge Karas referred the choice-of-law issue to the undersigned. At the May 6, 2019, conference, the undersigned set a briefing schedule for the instant motion and scheduled the matter for oral argument. See Docket Sheet, Minute Entry dated 5/6/2019. Thereafter the parties consented to the undersigned's jurisdiction. See footnote 1, supra. The matter was fully submitted on paper on June 3, 2019. On June 17, 2019, the parties appeared before the undersigned for oral argument. See Docket Sheet, Minute Entry dated 6/17/2019.

## II. DISCUSSION[12]

### A. Legal Standards

"A federal court sitting in diversity . . . must apply the choice of law rules of the forum state," here, New York. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157

---

[12] Any arguments made by the parties that include unsupported assertions of fact have not been considered in determining the issue before the Court.

(2d Cir. 2012) (per curiam) (hereinafter "Licci I") (quoting Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989) ); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Under New York's choice-of-law rules for tort cases, "[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved." Licci I, 672 F.3d at 157 (citation and internal quotation marks omitted); see also In re Allstate Ins. Co., 81 N.Y.2d 219, 223 (1993). If an "actual conflict" exists, "'[t]he law of the jurisdiction having the greatest interest in the litigation will be applied.'" GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 384 (2d Cir. 2006) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (1985). The "[i]nterest analysis is a 'flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 337 (2d Cir. 2005) (quoting Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72 (1993)).

"In tort law disputes, [the] interest analysis distinguishes between two sets of rules: conduct-regulating rules and loss-allocating rules." Licci I, 672 F.3d at 158 (citing GlobalNet, 449 F.3d at 384). "Conduct-regulating rules are those that 'people use as a guide to governing their primary conduct,'" Licci I, 672 F.3d at 158 (quoting K.T. v. Dash, 37 A.D.3d 107, 112 (1st Dep't 2006), "while [l]oss-allocating rules . . . are laws that 'prohibit, assign, or limit liability after the tort occurs.'" Licci I, 672 F.3d at 158 (quoting DeMasi v. Rogers, 34 A.D.3d 720, 721 (2d Dep't 2006) (internal quotation marks omitted). "Put differently, conduct-regulating rules lay down the behavioral rules of the road,' GlobalNet, 449 F.3d at 384, whereas loss-allocating rules 'prohibit, assign, or limit liability' for violations of those rules, Padula[v. Lilarn Properties Corp.], 84 N.Y.2d [519,] 522 [(1994)]." Conti v. Doe, No. 17-CV-9268 (VEC), 2019 WL

952281, at *11 (S.D.N.Y. Feb. 27, 2019); see also Cooney, 81 N.Y.2d at 72 (referring to loss-allocating rules as "postevent remedial rules").

If the conflict concerns conduct-regulating rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." GlobalNet, 449 F.3d at 384 (quoting Cooney, 81 N.Y.2d at 72). But if the conflict concerns loss-allocating rules, the court must apply the three choice-of-law principles articulated by the New York Court of Appeals in Neumeier v. Kuehner, 31 N.Y.2d 121, 128 (1972),[13] which consider "the domiciles of the parties, the place where the tortious conduct occurred and where the injury was suffered, and the policies behind the substantive laws of the respective jurisdictions." Ulrich v. Moody's Corp., No. 13-CV-0008 (VSB)(MHD), 2014 WL 12776746, at *10 (S.D.N.Y. Mar. 31, 2014) (citing Bing v. Halstead, 495 F. Supp. 517, 520 (S.D.N.Y. 1980)).

The first rule, pursuant to Neumeier, dictates that when a plaintiff and defendant are domiciled in the same state, then the law of that state controls. See Cooney, 81 N.Y.2d at 73. The second rule deals with cases in which a plaintiff and defendant are domiciled in different states, the tort at issue took place in one of those states, and the law of each state favors its respective domiciliary. See id. In such a case, the law of the state where the injury occurred should generally be applied. See id.

The third Neumeier rule is applicable to other split-domicile cases, including cases where a plaintiff and defendant are domiciled in different states and the tort at issue occurred in a third

---

[13] While Neumeier involved a choice-of-law analysis regarding a guest-statute, the general principles espoused in Neumeier have been extended to cover loss-allocation laws. See Heisler v. Toyota Motor Credit Corp., 884 F. Supp. 128, 131 (S.D.N.Y. 1995) ("Although the Neumeier rules were developed in the context of guest statutes . . . subsequent decisions have made clear that New York courts apply these three principles to loss-allocation cases generally").

state, the locus state. See id. at 73-74. In these cases, the law of the place of injury presumptively applies, unless "displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." Id. at 74 (quoting Neumeier, 31 N.Y.2d at 128) (internal quotation marks omitted). "Where the interest of each state in enforcement of its law is roughly equal, 'the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way.'" Esco Fasteners, Co., Inc. v. Korea Hinomoto Co., Ltd., 928 F. Supp. 252, 256 (E.D.N.Y. 1996) (quoting Cooney, 81 N.Y.2d at 74).

### B.  Preliminary Issues

Three jurisdictions have been implicated in this case by the parties:  Connecticut, New York, and New Jersey. As Plaintiff acknowledged during oral argument, no party has asked the Court to apply the law of New Jersey to this issue. Since none of the parties have argued for the application of New Jersey law, the Court may treat the choice of laws as being only between Connecticut and New York. See Galeotti v. Cianbro Corp., No. 12-CV-00900 (MAD), 2013 WL 3207312, at *8 (N.D.N.Y. June 24, 2013) (collecting cases).

In this case, the parties do not dispute that an actual conflict exists between the wrongful death statutes of New York and Connecticut law.[14]  Likewise, the parties do not dispute and the

---

[14] Plaintiff acknowledged at oral argument that the two "primary categories" of damages available under Connecticut law (and not New York law) are for loss of consortium and loss of enjoyment of life. Additionally, the parties have explicitly recognized the conflict in their moving papers. See ECF No. 85, Plaintiff's Memorandum of Law ("Pl.'s Memo. of Law") at 3 ("For example, but by no means exclusively, Connecticut law allows for damages in a wrongful death case to include a decedent's loss of enjoyment of life's activities and for post-mortem loss of consortium by a spouse, neither of which are recoverable under New York law."); ECF No. 99, O'Neill/Onekey Memorandum of Law ("O'Neill/Onekey Memo. of Law") at 8 ("[P]laintiff seeks to recover for post-mortem loss of consortium and the decedent's loss of enjoyment of life

Court agrees that the laws at issue are properly characterized as loss-allocating, thus implicating the Neumeier principles. See Bak v. Metro-North R.R. Co., 100 F. Supp. 3d 331, 338 (S.D.N.Y. 2015) ("wrongful death statutes are loss allocating because they assign liability after a tort has occurred."). As it is undisputed that a conflict exists and that the relevant laws are loss-allocating, the undersigned must first determine the domiciles of each party in order to apply the principles set forth in Neumeier.

### 1. The Parties' Domiciles & The Third-Party Defendants

There is no dispute that Plaintiff is a citizen of Connecticut, Decedent was a citizen of Connecticut, Onekey and Sesi are domiciliaries of New Jersey, Quazza is a citizen of New Jersey, and NGM and MG are domiciliaries of Connecticut. However, the parties dispute the domiciles of O'Neill and Bonded.

Turning to O'Neill, Plaintiff contends that O'Neill is domiciled in New Jersey. Pl.'s Memo. of Law at 1. However, O'Neill suggests that it is a New York domiciliary. O'Neill

---

. . . New York, however, does not permit or otherwise allow for recovery for these alleged damages.") (citations omitted).

Case law also recognizes the conflict between these states' wrongful death statutes. See Platano v. Norm's Castle, Inc., 830 F. Supp. 796, 798 (S.D.N.Y. 1993) ("The principal distinction with respect to damages is that . . . Connecticut's wrongful death statute, unlike that of New York, permits recovery for loss of enjoyment of life on the part of the decedent."); Morgan Guar. Tr. Co. of New York v. Garrett Corp., 625 F. Supp. 752, 760 (S.D.N.Y. 1986) ("The wrongful death damage laws of New York and Connecticut differ in one significant respect. Connecticut permits recovery for two major elements of damages in a wrongful death action: (1) the value of decedent's lost earning capacity less prospective personal living expenses and (2) the value of decedent's lost enjoyment of life. New York permits recovery only for the beneficiaries' loss of financial support and prospective inheritance. Recovery for a decedent's lost earnings under Connecticut law, or survivors' lost income under New York law, are likely to result in similar awards. Connecticut, however, allows an additional claim for the decedent's "lost enjoyment of life," a claim not allowed in New York.") (internal citations omitted).

Accordingly, the undersigned is satisfied that an actual conflict exists in this case.

submitted a printout from New York State's Department of State Division of Corporation's website that lists its "jurisdiction" as New York and its "DOS Process" address as New Jersey. O'Neill/Onekey Memo. of Law, Attach. 1. O'Neill further asserts that it is a limited liability corporation duly organized and existing under the laws of New York, does not maintain offices or transact business in Connecticut, and owned the construction site at One Dutchess Avenue in Poughkeepsie, New York. O'Neill/Onekey Memo. of Law at 6. O'Neill states that it is "a New York business entity that owns the property at One Dutchess Avenue, Poughkeepsie, New York." Id. at 9. The undersigned pressed O'Neill's counsel at oral argument on the issue of O'Neill's domicile to no avail. At oral argument, O'Neill's counsel asserted that O'Neill owned substantial real estate in New York and was incorporated in New York, but that the location of its principal place of business would need to be ascertained during discovery.

While O'Neill's arguments in its opposition papers and at oral argument suggest that it is a domiciliary of New York, O'Neill has not affirmatively argued that it is a New York domiciliary or a New Jersey domiciliary. However, assuming O'Neill was a domiciliary of New York, the second Neumeier principle would be controlling because Plaintiff and O'Neill would be domiciliaries of different states—Connecticut and New York, the tort at issue occurred in New York,[15] and the law of each state would favor its respective domiciliary. See Cooney, 81 N.Y.2d at 73 (describing applicability of the second Neumeier principle). But as previously noted, O'Neill argues that the third Neumeier principle is applicable in this case. See O'Neill/Onekey Memo. of Law at 11-13. For the third Neumeier principle to apply in this case, three distinct domiciles would need to be at play and thus, O'Neill would need to be a domiciliary of New Jersey. Because O'Neill has not argued that it is a New York or New Jersey

---

[15] Plaintiff argues that New York is not the locus state. The Court disagrees. See infra § II.B.2.

domiciliary, yet concedes that the third <u>Neumeier</u> principle is nonetheless applicable, the Court

treats O'Neill as a New Jersey domiciliary for purposes of deciding the issue before the Court.[16]

Turning next to the issue of Bonded's domicile, Plaintiff argues that Bonded is "a

Connecticut-based company." Pl's Memo. of Law at 2. In its opposition, Bonded asserts that

Plaintiff "incorrectly identifies [it] as a Connecticut company" and that it "is a New York

company." ECF No. 94, Bonded Memorandum of Law ("Bonded Memo. of Law") at 3.

Bonded further argues that it is incorporated in New York, has its corporate headquarters in New

York, and does not have any offices in Connecticut. <u>Id.</u> It further notes that in its answer to the

third-party complaint, it admitted that it was a domestic New York company. Bonded Answer ¶

33; Bonded Mem. of Law at 4. Bonded also submitted the sworn affidavit of Nick Clemente, an

operations manager at Bonded, stating that "Bonded is a New York based company" with

corporate headquarters in New York, and attached a printout from New York State's Department

of State Division of Corporation's website that lists Bonded's "jurisdiction" as New York and its

"DOS Process" address as New York. ECF No. 93-1, Clemente Affidavit.

The Court need not reach the issue of Bonded's domicile as it is not relevant to the

choice-of-law analysis. Nor does the undersigned find the domiciles and contacts of any other

Third-Party Defendant to be relevant to the instant dispute. "As the New York Court of Appeals

has stated, 'the correct way to conduct a choice-of-law analysis is to consider each plaintiff vis-à-

vis each defendant.'" <u>Desir Austin v. Ray's Rapid Transporting LLC</u>, No. 13-CV-912 (VMS),

2015 WL 9412542, at *8 (E.D.N.Y. Dec. 21, 2015) (quoting <u>Edwards v. Erie Coach Lines Co.</u>,

---

[16] Under a hypothetical scenario in which O'Neill is domiciled in New York and not New Jersey, thus invoking the second <u>Neumeier</u> principle, New York law would apply to the determination of damages. Because the Court finds that under either the second or third <u>Neumeier</u> principle, New York law will apply, the issue of O'Neill's domicile is not of critical importance. <u>See</u> <u>infra</u> § II.C.

17 N.Y.3d 306, 329 2011 (2011)).  "In other words, it is possible to apply one state's laws to Plaintiff's claims against Defendants/Third-party Plaintiffs and another state's laws to the claims made by Defendants/Third-party Plaintiffs against Third-party Defendants."  <u>Desir Austin</u>, 2015 WL 9412542, at *8 ("As such, rather than make a determination that New York or Florida law applies wholesale, the Court will analyze the original action and third-party action separately."); <u>Tkaczevski v. Ryder Truck Rental</u>, 22 F. Supp. 2d 169, 172 (S.D.N.Y. 1998) ("Choice of law is not determined <u>in toto</u> for an entire litigation but must be analyzed as to each claim in an action."); <u>Edwards</u>, 17 N.Y.3d at 330-31 (applying Ontario's loss allocating statute to claims made by Plaintiff against Defendants and New York's loss allocating statute to claims by Defendants/Third-party Plaintiffs against Third-party Defendants)); <u>Schultz</u>, 65 N.Y.2d at 189 (performing the <u>Neumeier</u> analysis on a party-by-party basis).

The undersigned agrees with Plaintiff that the "only parties properly considered in connection with a choice-of-law analysis of applicable damages law in this care are the parties to the main action, since damages is only an issue in that action, and not the third-party action, in which the sole issues are contribution and indemnification."  ECF No. 102, Plaintiff's Reply ("Pl.'s Reply") at 4-5.  At oral argument, Third-Party Defendants argued, in essence, that they have an interest in the determination of damages as it directly affects the amount of contribution they may have to pay to Plaintiff and that damages, indemnification, and contribution should be "treated as one" as the Third-Party Defendants' actions or omissions are tied to what happened in this case.  Certainly, while the Third-Party Defendants in this case have a <u>practical</u> interest in paying less damages to O'Neill and Onekey, that does not equate to having a legal interest or standing in the instant dispute.  See <u>Lindsay v. Toyota Motor Sales, U.S.A., Inc.</u>, No. 04-CV-10137 (NRB), 2005 WL 2030311, at *4 (S.D.N.Y. Aug. 22, 2005) (explaining that party had "no

true substantive interest" in what law applied because it was not a party to the claim at issue); Restatement (Second) Conflict of Laws § 145 (1971) (in determining choice of law, the domicile of defendants is to be evaluated "according to their relative importance with respect to the particular issue"). Despite the Third-Party Defendants' arguments, the Court considers "each plaintiff vis-à-vis each defendant" and analyzes the choice-of-law issue in the original action separate and apart from the third-party action. Desir Austin, 2015 WL 9412542, at *8 (citation and internal quotation marks omitted). The Third-Party Defendants' inclusion in this action should not play a role in determining what law applies to Plaintiff's wrongful death claim against O'Neill and Onekey as the Third-Party Defendants have no direct liability to Plaintiff. Accordingly, the Court will not consider the interests of the Third-Party Defendants or their respective arguments. NGM and MG's cross-motion is therefore moot.

Even though the arguments raised by the Third-Party Defendants will not be addressed, the undersigned notes that Bonded conflates the analysis. In its opposition papers, Bonded acknowledges that "Connecticut has a much more generous wrongful death statutory scheme than New York does" and that O'Neill and Onekey seek contribution from Bonded as part of the third-party action. Bonded Memo. of Law at 5. Bonded then contends that it "would plainly be disadvantaged by the application of Connecticut law in this matter because that law would expose Bonded to more overall damages." Id. Bonded is the lone party that argues that this Court should undergo an analysis pursuant to the second principle set forth in Neumeier because Plaintiff is domiciled in Connecticut, Bonded is a New York domiciliary, and the locus of the accident is New York. Id. Bonded continued to advocate this position at oral argument despite having the opportunity to read all the parties' respective briefs. As previously noted, the original and third-party actions are analyzed separately. The analysis must be performed as between

Plaintiff and Defendants and not Plaintiff and Third-Party Defendants. See Desir Austin Austin, 2015 WL 9412542, at *8.

### 2. The Location of the Tort

The Court next addresses Plaintiff's contention that the "[p]lace of wrongdoing in this case is not in New York where the accident occurred, but at either Sesi or Onekey's offices in New Jersey or Bonded's place of business in Connecticut." Pl.'s Memo. of Law at 10. Plaintiff argues that the "collapse of the wall involved the design of the wall by Sesi and Quazza and/or the decision by Onekey to change or not follow the design, or in providing inadequate concrete blocks which, upon information and belief, were not manufactured in New York." Id. By contrast, O'Neill and Onekey contend that the accident occurred in New York. O'Neill/Onekey Memo. of Law at 9. Specifically, they contend that Plaintiff's argument that "the wrongful act did not actually occur in New York, as the allegedly inadequate concrete blocks were not manufactured in New York, is an inaccurate conclusion of how the accident occurred and is an issue of fact that has yet to be resolved." O'Neill/Onekey Memo. of Law at 12.

In cases where the alleged conduct and injury occur in different states, "the critical factor in determining the place of the wrong is 'where the last event necessary to make the actor liable occurred.'" Venturini v. Worldwide Marble & Granite Corp., No. 94-CV-4435 (RPP), 1995 WL 606281, at *3 (S.D.N.Y. Oct. 13, 1995) (quoting Schultz, 65 N.Y.2d at 195); see Hunter v. Derby Foods, Inc., 110 F.2d 970 (2d Cir. 1940). The last event necessary to create liability is injury. See Venturini, 1995 WL606281, at *3 (applying Michigan law to claim for indemnification and contribution where underlying tort occurred in Michigan, despite allegations that defendant's negligent acts upon which claim for indemnification was based occurred in New York.); Kramer v. Showa Denko K.K., 929 F. Supp. 733, 741 (S.D.N.Y. 1996) (finding the last

event to be where plaintiff purchased and ingested the product that allegedly caused his injuries in New York); Schultz, 65 N.Y.2d at 195 (finding that although misconduct occurred in New York, New Jersey was the locus of the tort because that was where plaintiffs' injuries occurred). No party has presented evidence that Decedent was injured outside of New York. Therefore, the undersigned finds that the last event necessary to make Defendants liable took place in New York where the accident occurred at the construction site.

### C.    The Third *Neumeier* Principle's Interest Analysis

In this case, the third Neumeier principle applies as Plaintiff is a Connecticut domiciliary, O'Neill and Onekey are New Jersey domiciliaries, and the tort occurred in New York. See Schultz, 65 N.Y.2d at 201 (applying third Neumeier principle where plaintiff and defendant were domiciled in different states that had conflicting loss-allocation rules and tort occurred in third jurisdiction).[17]

The Court first addresses Plaintiff's contention that Decedent's presence in New York at the time of the accident was arbitrary and based on his employer's decision to travel to New York to work at the construction project. Pl.'s Memo. of Law at 9. Plaintiff further asserts that Decedent was a Connecticut resident working for a Connecticut-based company and that he had not planned to be in New York. Id. at 9-10. At oral argument, Plaintiff explained that

_____

[17] The parties agree that the third Neumeier principle applies in split-domicile situations such as this. See Pl.'s Memo. of Law at 6 ("The case before this court clearly falls within the third scenario contemplated by Neumeier . . . ."); O'Neill/Onekey Memo. of Law at 10 ("The third Neumeier rule ("Neumeier -3"), relevant to the matter herein, uses the place of injury as the determining factor . . . ").

Both Defendants are domiciled in New Jersey and share similar interests in seeking application of New York law to the instant dispute. Defendants' counsel submitted opposition to the motion and acknowledged no variance in either O'Neill's or Onekey's interest. In this case, analyzing "each plaintiff vis-à-vis each defendant" would lead to the same result. Desir Austin, 2015 WL 9412542, at *8 (citation and internal quotation marks omitted). The Court will not perform two redundant interest analyses and will analyze the interests of the Defendants together.

Decedent's presence was arbitrary because he was "sent" to the jobsite and <u>he</u> had not made that decision. Defendants counter that Decedent "willingly travelled to New York for his employer" and "no evidence has been provided to demonstrate that [Decedent] was arbitrarily in the state or that he entered the state against his will." <u>Id.</u> at 12.

The Second Circuit has held that in the context of the third <u>Neumeier</u> principle, "New York courts typically only apply the plaintiff's jurisdiction's law in place of the locus jurisdiction's law if the tort's occurrence in the locus jurisdiction was merely 'fortuitous.'" <u>Galeotti</u>, 2013 WL 3207312, at *13 (quoting <u>Gilbert v. Seton Hall Univ.</u>, 332 F.3d 105, 109-12 (2d Cir. 2003) (citing <u>Pescatore v. Pan Am. World Airways, Inc.</u>, 97 F.3d 1, 12-14 (2d Cir. 1996) (holding that the locus jurisdiction's law should not apply because the accident was caused by a bomb exploding aboard a plane that was mid-flight))).

First, the undersigned addresses Plaintiff's constructed definition of "arbitrary." The Merriam-Webster Dictionary defines "arbitrary" as "existing or coming about seemingly at random or by chance or as a capricious and unreasonable act of will[.]" Merriam-Webster Online, https://www.merriam-webster.com/dictionary/arbitrary (last visited July 25, 2019). Likewise, the Cambridge English Dictionary defines "arbitrary" as "based on chance rather than being planned or based on reason[.]" Cambridge English Dictionary, https://dictionary.cambridge.org/dictionary/english/arbitrary (last visited July 25, 2019). Thus, the Court does not accept Plaintiff's definition of "arbitrary." While Plaintiff contends that Decedent's presence was arbitrary because his employer "sent" him to the job site, the Decedent made the decision of his own free will to work for a company that may have required him to travel to construction sites outside of Connecticut. This decision is not based on chance. Thus, Plaintiff's definition of "arbitrary" is incorrect.

Plaintiff also cites to <u>Pescatore</u> and <u>Datskow v. Teledyne Continental Motors Aircraft</u> <u>Prods.</u>, 807 F. Supp. 941 (W.D.N.Y. 1992) to further support her position. Pl.'s Memo. of Law at 9-10. Both of these cases involve airplane travel where a disaster occurred at random. While the Court agrees with Plaintiff that in some instances, the presence of an individual in a state is merely fortuitous, that is not the case here. <u>See</u> <u>Pescatore</u>, 97 F.3d at 13 ("First, in a disaster befalling a plane aloft, the place of the crash is often random (or, as here, fixed by a warped mind) and the sovereignty in which the accident occurs has little interest in applying its substantive law to the case."); <u>Babcock v. Jackson</u>, 12 N.Y.2d 473, 482 (1963) (finding the place of accident had little interest where it was a "purely adventitious circumstance that the accident occurred there"); <u>Foster v. United States</u>, 768 F.2d 1278, 1282 (11th Cir. 1985) (disfavoring law of place where air disaster occurred); <u>In re Air Crash Disaster Near Chicago, Ill.</u>, 644 F.2d 594, 615 (7th Cir.) (explaining that in air disasters, "place of injury is largely fortuitous"), <u>cert.</u> <u>denied</u>, 454 U.S. 878 (1981). Here, as Defendants note, both Decedent and Onekey voluntarily associated themselves with New York when they agreed to perform work at the construction site in Poughkeepsie, New York. O'Neill/Onekey Memo. of Law at 9, 12. Decedent was a construction worker employed by MG, assigned to work at the job site in New York, and made the decision to travel to New York to work at the construction site. While it is true that at this stage of the litigation where discovery is at its inception, there is no evidence as to how frequently Decedent travelled to other states or to this construction site in particular, this is of no moment because there is no frequency or temporal requirement. All that is required is a "conscious, voluntary decision" to travel to New York and work at the construction site, which is present here. <u>Galeotti</u>, 2013 WL 3207312, at *13 (citing <u>Gilbert</u>, 332 F.3d at 108) (finding that making a single decision to play in a rugby match at St. John's University in New York was not

fortuitous); Huang v. Lee, 734 F. Supp. 71, 73 (E.D.N.Y. 1990) (holding that plaintiff's decision to enter New Jersey to spend one single night at his uncle's house was too deliberate to be considered "fortuitous"). Accordingly, the Court does not find that Decedent's presence in New York was arbitrary.

Turning next to the interest analysis, Plaintiff asserts that New York has "little or no interest" in compensating the Decedent's survivors and beneficiaries, but Connecticut has an "'[important and]obvious' interest in seeing that its residents are adequately compensated." Pl.'s Memo. of Law at 10 (quoting Pescatore, 97 F.3d at 14); Pl.'s Reply at 2 (quoting Pescatore, 97 F.3d at 14).[18] Defendants counter that "New York has the prevailing interest in the outcome of this litigation" because "the accident occurred in New York and each party had significant contacts with New York." O'Neill/Onekey Memo. of Law at 9. Additionally, "all parties subjected themselves to work within the state as each were knowingly involved in the project at the premises in Poughkeepsie, New York." Id.

The "[third Neumeier principle] defaults to the lex loci delicti doctrine based upon the presupposition that 'the interests of each State in enforcement of its law is roughly equal.'" Diehl v. Ogorewac, 836 F. Supp. 88, 93 (E.D.N.Y. 1993) (quoting Cooney, 81 N.Y.2d at 74). This principle provides that "[a]ssuming that the interest of each State in enforcement of its law is roughly equal . . . the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 53 (2d Cir. 2005) (quoting Cooney, 81 N.Y.2d at

_____

[18] The undersigned notes that Plaintiff incorrectly quotes from Pescatore in her Motion, but properly quotes to Pescatore in her Reply.

74); <u>Zumbo ex rel. Estate of Zumbo v. T. And B. Equip. Co.</u>, No. 07-CV-6340 (LMM), 2009

WL 130182, at *2 (S.D.N.Y. Jan. 15, 2009). "Moreover, locus is a neutral factor, rebutting an

inference that the forum State is merely protecting its own domiciliary or favoring its own law."

<u>Zumbo ex rel. Estate of Zumbo</u>, 2009 WL 130182, at *2 (quoting <u>Cooney</u>, 81 N.Y.2d at 74)

(citations omitted). "However, this premise fails when the states have disproportionate interests

in the resolution of the issue." <u>Diehl</u>, 836 F. Supp. at 93 (citing <u>Schultz</u>, 65 N.Y.2d at 201-02).

"In such a case, this Court should apply the law of the state having the greatest policy interests at

stake unless doing so will impair the smooth working of the multi-state system or produce great

uncertainty for litigants." <u>Diehl,</u> 836 F. Supp. at 93 (citing <u>Neumeier</u>, 31 N.Y.2d at 128).[19]

---

[19] In her moving papers and at oral argument, Plaintiff argued, in essence, that in the third <u>Neumeier</u> principle scenario, the respective state interests must first be weighed and, in this case, that weighing results in Connecticut having a greater interest. Plaintiff next argued that that weighing resulted in Connecticut having a greater interest, and as such, the locus jurisdiction presumption did not apply and the Court need not further determine whether application of Connecticut law would "impair the smooth working of the multi-state system or produce great uncertainty for litigants." <u>Neumeier</u>, 31 N.Y.3d at 123. The Court agrees with Plaintiff, in part.

In reviewing case law applying the third <u>Neumeier</u> principle, most courts in this district begin the analysis applying the locus presumption in the first instance, then discuss the relative interests of the states whose laws actually conflict, and then go on to analyze whether the third <u>Neumeier</u> principle's presumption has been overcome. Yet case law also acknowledges that application of the third <u>Neumeier</u> principle rests on the assumption that the interest of each state is "roughly equal." <u>Cooney</u>, 81 N.Y.3d at 74. What is unclear is whether the interest analysis must first be conducted before applying the locus presumption to determine whether the states' respective interests are "roughly equal" or if the interest analysis must occur once the presumption has applied. Additional clarification on this issue would be welcome. <u>Id.</u>

Notwithstanding the foregoing, a weighing of interests must occur at <u>some point</u> in the analysis. The third <u>Neumeier</u> principle is applicable in split-domicile situations and applies the locus as a "tie breaker." "Tie breakers" are invoked in situations where there is some equal interest. With these concepts in mind, the undersigned is persuaded that the interest analysis and weighing of interests in the third <u>Neumeier</u> principle scenario should occur <u>before</u> defaulting to the locus presumption. If after weighing the interests, the interests are unequal, the locus should not apply and the "state having the greatest policy interests at stake" should apply "unless doing so will impair the smooth working of the multi-state system or produce great uncertainty for litigants." <u>Diehl</u>, 836 F. Supp. at 93 (citing <u>Neumeier</u>, 31 N.Y.2d at 128).

In this case, Connecticut, "has a direct stake in the resolution of this issue because it directly impacts the recovery of a [Connecticut] plaintiff." Diehl, 836 F. Supp. at 93. "When the extent of victim compensation is at issue, the plaintiff's domicile has an interest in applying its law because that forum is where the loss is felt and where the burden of the victim's uncompensated needs may fall." Sheldon v. PHH Corp., 135 F.3d 848, 853-54 (2d Cir. 1998); see, e.g., Pescatore, 97 F.3d at 14; Burgio v. McDonnell Douglas, Inc., 747 F. Supp. 865, 872 (E.D.N.Y. 1990).

Turning to New York, the undersigned first notes that for purposes of this motion, New York is not the domicile of either Defendant. However, O'Neill and Onekey were authorized to conduct business in New York and O'Neill did and continues to do business in New York. TPC ¶¶ 7, 8, 10, 11; O'Neill/Onekey Answer ¶¶ 3-5.[20] Moreover, Defendants admit that their respective principal places of business are in New Jersey. TPC ¶¶ 6, 12; O'Neill/Onekey Answer ¶¶ 3, 6. Thus, the only connection New York has to this dispute is that it serves as the location of the accident and is where Defendants conduct business.

Here, because no party resides in New York, "that state will be neither benefitted nor burdened by the outcome of this case." Smolensky v. Rosa, No. 05-CV-5992 (DFE), 2005 WL 3557260, at *2 (S.D.N.Y. Dec. 28, 2005) (quoting Diehl, 836 F. Supp. at 93). "Where none of the parties is a domiciliary of the locus state, its interest in applying its loss-allocation law is virtually nonexistent." Lindsay v. Toyota Motor Sales, U.S.A., Inc., No. 04-CV-10137 (NRB), 2005 WL 2030311, at *4 (S.D.N.Y. Aug. 22, 2005); see Gilbert, 332 F.3d at 109-10 (citing Schultz, 65 N.Y.2d at 201) ("[T]he New York Court of Appeals has made it reasonably clear that

---

[20] In O'Neill and Onekey's Answer they state that they "deny having knowledge or information sufficient to form a belief" as to whether Onekey "was and still is an entity transacting and/or doing business in the State of New York." O'Neill/Onekey Answer ¶ 5; TPC ¶ 11.

the state in which the injury occurs has little interest in seeing its own loss allocation rules applied."); Armstead v. Nat'l R.R. Passenger Corp., 954 F. Supp. 111, 113 (S.D.N.Y. 1997) ("Virginia [the locus jurisdiction] has no substantive law interest in enforcing its [loss allocation] rule when two non-domiciliaries are involved."); O'Connor v. U.S. Fencing Ass'n, 260 F. Supp. 2d 545, 559 (E.D.N.Y. 2003) (locus jurisdiction has "little interest in enforcing its loss allocation rules with respect to [ ] non-domiciliaries."); Murphy v. Acme Mkts., Inc., 650 F. Supp. 51, 54 (E.D.N.Y. 1986) ("New Jersey [the locus jurisdiction] has little or no interest in applying its own loss allocation rules to this case because no party involved is a New Jersey domiciliary."). When the conflicting laws relate to loss allocation, the "locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy" when the accident did not involve a citizen of the forum state. Dargahi v. Honda Lease Tr., 370 F. App'x 172, 174 (2d Cir. 2010) (quoting Schultz, 65 N.Y.2d at 198) (emphasis added); see Sheldon, 135 F.3d at 854 (finding locus state had minimal interest where the locus state's "sole relevant connection to this case is that the accident occurred there.").[21] But see Guidi v. Inter-Cont'l Hotels & Resorts Corp., No. 95-CV-9006 (LAP), 2003 WL 1907901, at *5 (S.D.N.Y. Apr. 16, 2003) (explaining that "Egypt[, the locus of the tort,] has a substantial interest in seeing its damages laws applied

---

[21] The undersigned notes that Defendants state the following in their opposition papers: "When conflicting laws address standards of conduct, the locus of the tort will have 'a predominant, if not exclusive, concern' because that jurisdiction maintains an interest in protecting the reasonable expectations of 'the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction.'" O'Neil/Onekey Memo. of Law at 13 (quoting Schultz, 65 N.Y.2d at 197) (emphasis added). Defendants correctly quote Schultz, but it is inapplicable where, as here, loss allocating laws are at issue. See Gordon v. Eastern Air Lines, 391 F. Supp. 31, 33 (S.D.N.Y.1975) ("Since the issue of defendant's conduct is not here involved, Florida[, the locus state,] has no interest in the application of its law to the narrow issue of damages before the court simply because the accident occurred within its borders.").

where defendant has deliberately chosen to place a hotel within its borders."); <u>Simons v. Marriott Corp.</u>, No. 92-CV-3762 (SWK), 1993 WL 410457, at *7 (S.D.N.Y. Oct. 13, 1993) (applying law of state where accident occurred because, <u>inter alia</u>, that state had an interest in seeing its damages laws applied where defendant hotel corporation chose to place a hotel there).

In this case, the Court finds that New York has little to no interest in limiting or enhancing the recovery a Connecticut Plaintiff may receive from New Jersey Defendants. While Defendants, as New Jersey domiciliaries, may conduct business in New York and purchase property in New York, their interests in any damage award to Plaintiff are minimal at best. As such, Connecticut and New York do not have "roughly equal" interests to warrant using the locus state, New York, as the "tie breaker" in this split-domicile situation. <u>Cooney</u>, 81 N.Y.2d at 74. Thus, at this stage in the analysis, Connecticut law has a greater interest in seeing its loss allocation rules apply to Plaintiff's wrongful death claim. But this does not conclude the analysis as the Court must now address whether application of Connecticut law "will impair the smooth working of the multi-state system or produce great uncertainty for litigants." <u>Diehl</u>, 836 F. Supp. at 93 (citing <u>Neumeier</u>, 31 N.Y.2d at 128).

D.     **<u>Whether Application of Connecticut Law Will Impair the Smooth Working of the Multi-State System or Cause Great Uncertainty for Litigants</u>**

Defendants argue that "applying the loss allocating rules of [Connecticut] in this matter would be highly disruptive and create considerable uncertainty." O'Neill/Onekey Memo. of Law at 13. Defendants contend that New York law should be applied to Plaintiff's wrongful death claim because New York is a "hub of interstate commerce [and] international commerce[,]" has considerable interests in "assuring that entities planning to do business in the state have consistency and certainty as to the laws that will be applied to them[,]" that Decedent "was one of hundreds of construction workers from multiple trades working on the project," and that the

construction project involved "numerous contractors from multiple jurisdictions." Id. Defendants also argue that the parties reasonably expected New York law to apply as "all parties availed themselves to this state" and "all parties partook in the project." Id. at 15.[22]

Plaintiff, in turn, argues that Decedent reasonably expected Connecticut law to apply because he was Connecticut resident working at a Connecticut-based masonry company. Pl.'s Memo. of Law at 11. Additionally, Plaintiff contends that Decedent made a "clear, deliberate choice to accept the burdens and benefits of Connecticut's loss-distribution rules, not New York's" and that Decedent's family "accepted the burden of Connecticut law which prohibits a direct lawsuit against [Decedent's] employer." Id. Plaintiff also argues that Defendants held a reasonable expectation that Connecticut law would apply because they contracted with Connecticut-based companies, NGM, MG, and Bonded, and thus, it was foreseeable to Defendants that "they might be subjected to sister-state laws with loss allocation rules more favorable to the [P]laintiff than those of New York." Pl.'s Memo. of Law at 11.[23]

"Litigants, as business people, must be able to plan their affairs with some level of certainty when engaging in interstate commerce. Thus, meeting the reasonable expectations of the parties is . . . a predominant consideration in [the] interest analysis." Galeotti, 2013 WL 3207312, at *15 (quoting Mihalic ex rel. Estate of Johnson v. K-Mart of Amsterdam, 363 F.

---

[22] Defendants also argue that discovery will reveal that the contractors who worked at the construction site were required to obtain general liability and Workers' Compensation insurance under the laws of New York and as such, it would be unreasonable for Defendants "who are not Connecticut domiciliaries to expect to be subjected to a lawsuit applying Connecticut law on damages." O'Neil/Onekey Memo. of Law at 15. At this stage in the litigation, Defendants have not established this fact and have not submitted any evidence that this fact is true. Thus, the Court assigns no weight to this argument.

[23] Plaintiff also notes that Decedent's family is collecting Worker's Compensation benefits pursuant to Connecticut law. Pl.'s Memo of Law at 11. The undersigned assigns no weight to this argument as Plaintiff has not submitted any evidence that this contention is true.

Supp. 2d 394, 401 (N.D.N.Y. 2005)).  In this case, Decedent was a Connecticut domiciliary

working for a Connecticut-based company who performed work in New York.  The accident

occurred in New York at a New York construction site.  Defendants are New Jersey

domiciliaries who contracted with Connecticut-based companies to have work performed in New

York.  Both Decedent and Defendants should have reasonably expected that New York's loss

allocating rules would apply, since that is the state where their "relevant contacts" with each

other arose.  Gilbert, 332 F.3d at 111 (applying loss allocation rules of the state where the parties

had "shared most of their contacts with each other."); Schultz, 65 N.Y.2d at 201-02 (observing

that application of New Jersey law would "provide certainty for the litigants whose only

reasonable expectation" would be that the law of New Jersey, where the parties had shared most

of their contacts, would apply).  In essence, this action arose from the voluntary association of

the parties in New York and as such, it is reasonable to expect that any loss allocation should be

governed by that state's laws.  Thus, the Court finds that it is more reasonable that all parties,

converging in New York to perform construction work, would likely expect that New York law

would apply.  Moreover, it would promote significant uncertainty if the extent of Defendants'

liability depended on the state of domicile of whoever is harmed as a result of conduct that

occurred exclusively in New York.  See Leach v. Kaykov, No. 07-CV-4060(KAM)(VVP), 2010

WL 1813772, at *5 (E.D.N.Y. Apr. 2, 2010).  Thus, the third Neumeier principle dictates

application of New York law to Plaintiff's wrongful death damages.

### E.    The Public Policy Exception

Plaintiff argues that Connecticut's wrongful death provisions do not violate public policy

and Defendants argue the opposite—that Connecticut's wrongful death provisions violate New

York's public policy.  See Pl.'s Memo. of Law at 12-14; O'Neill/Onekey Memo. of Law at 16-

18.  "The public policy doctrine is an exception to implementing an otherwise applicable choice of law in which the forum refuses to apply a portion of foreign law because it is contrary or repugnant to its State's own public policy."  <u>Schultz</u>, 65 N.Y.2d at 202 (citation omitted).  "Under the public policy exception, when otherwise applicable foreign law would 'violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal', the court may refuse to enforce it."  <u>Cooney</u>, 81 N.Y.2d at 78 (citation omitted).  "New York courts do not lightly use the public policy exception to override the conclusions of their usual choice of laws analysis; there is a 'heavy burden' on the party seeking such an exception."  <u>Galeotti</u>, 2013 WL 3207312, at *16 (quoting <u>Schultz</u>, 65 N.Y.2d at 202).

Additionally, the New York Court of Appeals clearly has held that "the public policy exception should be considered only after the court has first determined, under choice of law principles, that the applicable substantive law is not the forum's law."  <u>Kramer</u>, 929 F. Supp. at 741 (quoting <u>Cooney</u>, 81 N.Y.2d at 78); <u>Miller v. Bombardier, Inc.</u>, 872 F. Supp. 114, 119 (S.D.N.Y. 1995) (quoting <u>Cooney</u>, 81 N.Y.2d 78); <u>Schultz</u>, 65 N.Y.2d at 202.  Because this Court determined that the applicable substantive law governing the resolution of Plaintiff's wrongful death cause of action is the law of the forum state, <u>i.e.</u>, New York, the parties' arguments regarding the public policy exception are moot.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is **DENIED,** NGM and MG's cross-motion

is **MOOT,** and the Court finds that New York law is applicable to the determination of damages

on Plaintiff's wrongful death claim.

Dated: August 1, 2019
White Plains, New York

**SO ORDERED**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York