UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH V. MEJIA as Administrator of the Estate of
MAXIMILIANO SABAN, and ELIZABETH V. MEJIA,
Individually,

<table>
<tr><td>Plaintiff,</td><td>DOCKET NO.<br>7:18-CV-6483</td></tr>
</table>

-against-

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,      **COMPROMISE ORDER**

Defendants.

---

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

Third-Party Plaintiff,

-against-

SESI CONSULTING ENGINEERS, P.C., KENNETH J.
QUAZZA, P.E., NEW GENERATIONS MASONRY, MG
COMMERCIAL CONCRETE, BONDED CONCRETE, INC.,

Third-Party Defendant.

---

Upon reading and filing the annexed affidavit of Plaintiff, ELIZABETH V. MEJIA as

Administrator of the Estate of MAXIMILIANO SABAN (with exhibits), duly sworn to on the

28th day of August 2020, and the affirmation of MICHAEL C. ZWAL (without exhibits), dated

the 29th day of July 2020; and it appearing to the satisfaction of the Court that it would be in the

best interest of the Estate to compromise and settle, pursuant to Local Civil Rule 83.2(b)(2), the

claim for wrongful death of MAXIMILIANO SABAN, deceased, for the total sum of

**$2,800,000.00,**

1

NOW, on motion of BAMUNDO ZWAL & SCHERMERHORN, LLP, attorneys for Plaintiff, it is hereby

ORDERED, that ELIZABETH V. MEJIA, as Administrator of the goods, chattels and credits which were of MAXIMILIANO SABAN, deceased, be and hereby is authorized and permitted to compromise and settle the claim for wrongful death of MAXIMILIANO SABAN, deceased, against the Defendants O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC for a sum of **$2,500,000.00;** Third-Party Defendants SESI CONSULTING ENGINEERS, P.C. and KENNETH J. QUAZZA, P.E. for a sum of **$180,000.00**; Third-Party Defendants NEW GENERATIONS MASONRY and MG COMMERCIAL CONCRETE by PENN-AMERICA INSURANCE COMPANY for a sum of **$100,000.00**; and Third-Party Defendant BONDED CONCRETE, INC. for a sum of **$20,000.00**, and to execute and deliver any and all papers necessary to effectuate the settlement, and it is further

ORDERED, that Defendants and Third-Party Defendants pay to BAMUNDO ZWAL & SCHERMERHORN, LLP as and for their disbursements the sum of **$23,585.38**, payable from the proceeds of the settlement, and it is further

ORDERED, that Defendants and Third-Party Defendants pay to BAMUNDO ZWAL & SCHERMERHORN, LLP as and for their attorneys' fee the sum of **$933,333.33**, payable from the proceeds of the settlement; and it is further

ORDERED, that the Workers' Compensation lien held by BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES be paid by BAMUNDO ZWAL & SCHERMERHORN, LLP out of the settlement proceeds in the sum of **$39,569.82**; and it is further

ORDERED, that Defendants and Third-Party Defendants pay to ELIZABETH V. MEJIA, the sum of **$501,755.73**; and it is further

ORDERED, that a total of **$1,300,000.00** will be used to fund the deferred benefits portion of the settlement for the benefit of ELIZABETH V. MEJIA, GREYSI SABAN, an Infant, and NATHALY SABAN VICENTE, an Infant. Those deferred benefits shall be payable as follows:

I.  **$450,000.00** will be used for Structured Settlement Benefits payable to ELIZABETH V. MEJIA as follows:

   a. $1,958.95, payable monthly, guaranteed for 12 years, beginning on January 1, 2021, with the last guaranteed payment on December 1, 2032;

   b. $250,000.00 payable at age 40 on October 2, 2032;

II. **$425,000.00** will be used for Structured Settlement Benefits payable to GREYSI SABAN as follows:

   a. $25,000.00 payable annually, guaranteed for 4 years, beginning on August 18, 2028, with the last guaranteed payment on August 18, 2031;

   b. $1,257.16 payable monthly beginning on August 18, 2032 for life with 30 years guaranteed;

III. **$425,000.00** will be used for Structured Settlement Benefits payable to NATHALY SABAN VICENTE as follows:

   a. $25,000.00 payable annually, guaranteed for 4 years, beginning on August 28, 2032, with the last guaranteed payment on August 28, 2035;

   b. $1,459.35 payable monthly beginning on August 28, 2036 for life with 30 years guaranteed.

3

ORDERED, that the projected funding date of the periodic payments set forth herein is August 7, 2020. In the event the periodic payments are not funded on or before that date, the amounts and/or timing of the payments may be changed without need for further Court approval, to ensure the individual costs do not exceed those indicated, for a total cost of **$1,300,000.00**. Any changes to payment amounts and/or timing shall be reflected in the Settlement Agreement and Release and the Qualified Assignment and Release to be executed by the parties; and it is further

ORDERED, that Defendant, Third-Party Defendant, and/or Insurer (Assignor) shall either make the periodic payments to ELIZABETH V. MEJIA, GREYSI SABAN, and NATHALY SABAN VICENTE or be and is hereby permitted to assign to MetLife Assignment Company (the Assignee) through a Qualified Assignment under §130 (c) of the Internal Revenue Code, the obligation to make the periodic payments, and it is further

ORDERED, that MetLife Assignment Company shall fund the obligation assumed through the purchase of an annuity from Metropolitan Tower Life Insurance Company, licensed to do business in New York and rated "A+" by A.M. Best rating agency; and it is further

ORDERED, that the performance of MetLife Assignment Company will be guaranteed by Metropolitan Tower Life Insurance Company; and it is further

ORDERED, that the future periodic payments cannot be accelerated, deferred, increased or decreased and no payee shall have the right or power to sell, encumber, assign or transfer the above-mentioned future periodic payments; and it is further

ORDERED, that the Defendants and Third-Party Defendants fund the structured settlements within 30 days of the executed Order; and it is further

ORDERED, that if the structures are not funded within 30 days the dates of the payments may be delayed based on the number of days the funding is delayed; and it is further

ORDERED, that the balance of the settlement of GREYSI SABAN, in the sum of $877.87, shall be paid by the Defendants and Third-Party Defendants, to ELIZABETH V. MEJIA, as mother and natural guardian of GREYSI SABAN, an Infant, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, to be deposited in the said bank in an account, or accounts, yielding the highest rate of interest available, in the name of the natural guardian, in trust for the Infant and for the sole use and benefit of the Infant; and that the time deposit accounts and certificate of deposit accounts shall be continuously renewed at maturity at the highest rate of interest then available, but the date of maturity thereof shall not extend beyond the date upon which the Infant attains the age of eighteen (18) years; and that when no such time deposit or certificate of deposit account is available, then the accumulated funds shall be placed in the bank's insured money market account; and that no withdrawals shall be made from said account, or accounts, before the Infant reaches the age of eighteen (18) years, except upon further order of any court with jurisdiction; and it is further

ORDERED, that the balance of the settlement of NATHALY SABAN VICENTE, the sum of $877.87, shall be paid by the Defendants and Third-Party Defendants, to ELIZABETH V. MEJIA, as mother and natural guardian of NATHALY SABAN VICENTE, an Infant, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, to be deposited in the said bank in an account, or

accounts, yielding the highest rate of interest available, in the name of the natural guardian,

in trust for the Infant and for the sole use and benefit of the Infant; and that the time deposit

accounts and certificate of deposit accounts shall be continuously renewed at maturity at the

highest rate of interest then available, but the date of maturity thereof shall not extend beyond the

date upon which the Infant attains the age of eighteen (18) years; and that when no such time

deposit or certificate of deposit account is available, then the accumulated funds shall be placed

in the bank's insured money market account; and that no withdrawals shall be made from said

account, or accounts, before the Infant reaches the age of eighteen (18) years, except upon

further order of any court with jurisdiction; and it is further

ORDERED, that all claims currently pending against the Defendants and Third-Party

Defendants are hereby dismissed with prejudice and without costs; and it is further

ORDERED, that ELIZABETH V. MEJIA as Administrator of the Estate of

MAXIMILIANO SABAN, be and hereby is authorized to deliver releases and any and all papers

necessary to effectuate such settlement and collect such monies herein, and attorneys are hereby

authorized to deliver Stipulations of Dismissal of the above-entitled action to the said Defendants

and Third-Party Defendants; and it is further

ORDERED, that the filing of a bond is dispensed with.

Date: _Sept. 14, 2020_

SO ORDERED:

HON. LISA MARGARET SMITH
United States Magistrate Judge

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH V. MEJIA as Administrator of the Estate of
MAXIMILIANO SABAN, and ELIZABETH V. MEJIA,
Individually,

Plaintiff,

DOCKET NO.
7:18-CV-6483

-against-

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

Defendants.

---

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

Third-Party Plaintiff,

-against-

SESI CONSULTING ENGINEERS, P.C., KENNETH J.
QUAZZA, P.E., NEW GENERATIONS MASONRY, MG
COMMERCIAL CONCRETE, BONDED CONCRETE, INC.,

Third-Party Defendant.

---

## <u>AFFIDAVIT OF ELIZABETH V. MEJIA</u>

ELIZABETH V. MEJIA, being duly sworn, deposes and says:

1.     I am the spouse and Administrator of the Estate of MAXIMILIANO SABAN, the above-named decedent, and presently reside at 70 Oak Street, 1st Floor, New Britain, Connecticut 06051, and I am a U.S. Citizen.

2.     The decedent died a resident of Hartford County of the State of Connecticut on August 3, 2017, and resided at 70 Oak Street, 1st Floor, New Britain, Connecticut 06051 at the time of his death.

3.      On November 1, 2017 Letters of Administration of the Goods, Chattels and

Credits, which were of MAXIMILIANO SABAN, deceased, were issued to me

by the Berlin Probate Court, State of Connecticut (see **Exhibit A**). To date, said Letters have not

been revoked and are presently in full force and effect.   No bond was required of me to

to cover any probable amount to be realized from said claim.

4.      The decedent at the time of death was an undocumented immigrant and was

working as a laborer.

5.      The decedent at the time of death was 28 years of age having been born on

May 16, 1989.

6.      The claims being settled arose on August 3, 2017 at a construction project

which involved the conversion of a former lumber yard into a multiple building, mixed

commercial and residential property. On that day, the decedent was working for Third-Party

Defendants, MG COMMERCIAL CONCRETE and/or NEW GENERATIONS MASONRY at

this construction site. He was crushed and killed when an improperly constructed wall retaining a

pile of soil collapsed and buried him beneath the concrete blocks of the wall and the soil it was

supposed to retain.

7.      It is my understanding that a lawsuit was commenced in this Court on July 18,

2018 against Defendants, O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC. On September

6, 2018, Defendants impleaded Third-Party Defendants, SESI CONSULTING ENGINEERS,

P.C., KENNETH J. QUAZZA, P.E., NEW GENERATIONS MASONRY, MG COMMERCIAL

CONCRETE, BONDED CONCRETE, INC. I further understand that the lawsuit has been

progressing and that the litigation has reached a point where some of the depositions have been

completed.

8.      I am aware that efforts to settle this case were ongoing for some time, including an unsuccessful mediation, held on March 6, 2020, to try and settle the case. I know that negotiations continued between the parties with the assistance of the mediator until the Defendants and Third-Party Defendants made a final combined offer of **$2,800,000.00** to settle all claims which are before this Court (see copy of the settlement agreement annexed hereto as **Exhibit B**). Defendants O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC will contribute **$2,5000,000.00**; Third-Party Defendants SESI CONSULTING ENGINEERS, P.C. and KENNETH J. QUAZZA, P.E. will contribute **$180,000.00**; Third-Party Defendants NEW GENERATIONS MASONRY and MG COMMERCIAL CONCRETE by PENN-AMERICA INSURANCE COMPANY will contribute **$100,000.00**; and Third-Party Defendant BONDED CONCRETE, INC. will contribute **$20,000.00** to the total settlement.

9.      My attorneys have explained the significant risks inherent in a trial of this case, including a jury's reaction to evidence concerning my marital relationship and the decedent's immigration status, and I understand that there would be a risk of receiving a smaller recovery and even the risk of a defense verdict.

10.     Under the circumstances of this case, I believe the settlement and proposed distribution is in the best interest of the Estate's distributees. I consent to the settlement and proposed distribution, the payment of disbursements and attorneys' fees and request the Court's approval of the settlement of this claim against Defendants O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC., and Third-Party Defendants SESI CONSULTING ENGINEERS, P.C., KENNETH J. QUAZZA, P.E., NEW GENERATIONS MASONRY, MG COMMERCIAL

CONCRETE, BONDED CONCRETE, INC.

11.     I was advised that the proceeds of a claim for wrongful death are being

apportioned pursuant to Connecticut law, under which the surviving spouse receives the

first one hundred thousand ($100,000.00) dollars plus one-half of the balance of the intestate

estate and the remaining balance is divided equally among the decedent's dependents. At the

time of his death, the decedent left the following distributees:

| NAME AND ADDRESS | RELATIONSHIP | DATE OF BIRTH | PRESENT AGE |
|---|---|---|---|
| Elizabeth V. Mejia<br>70 Oak Street, 1st Floor<br>New Britain, CT 06051 | Spouse | 10/02/1992 | 27 |
| Greysi Saban<br>70 Oak Street, 1st Floor<br>New Britain, CT 06051 | Infant-Daughter | 08/18/2010 | 10 |
| Nathaly Saban Vicente<br>70 Oak Street, 1st Floor<br>New Britain, CT 06051 | Infant-Daughter | 08/28/2014 | 6 |

That the foregoing are of sound mind, are citizens of the United States, and are under no

legal disability, *except* that GREYSI SABAN and NATHALY SABAN VICENTE are Infants

under the age of fourteen years old.

12.     The decedent left surviving no other child or children, either in or out of

wedlock, no issue of any pre-deceased child or children, and no other person interested herein or

of whom the Court is required to have information.

13.     The decedent died intestate, and there are presently no other assets or funds in the

estate to be administered.

14.     Decedent's funeral bill was paid in full and reimbursement is not being sought.

15.    There are no medical bills or hospital bills outstanding, and there are no assignments, compensation claims or liens filed with Plaintiff as administrator except for the following:

a)    Workers' Compensation lien held by Berkshire Hathaway Guard: **$39,569.82** (see **Exhibit C**).

16.    BAMUNDO ZWAL & SCHERMERHORN, LLP was retained by me on or about September 25, 2017 for the purpose of pursuing a wrongful death claim on behalf of the estate and beneficiaries of the decedent, MAXIMILIANO SABAN (see copies of the retainer agreement and retainer statements annexed hereto as **Exhibit D**). In light of my retainer agreement, the work done and the result achieved, I request the Court approve the payment of fees pursuant to 22 NYCRR 806.27(b) Schedule B as follows: one-third (33 1/3%) of the gross settlement of **$2,800,000.00**, or **$933,333.33**, plus attorneys' disbursements in the sum of **$23,585.38**; which together amount to a total compensation of **$956,973.72**.   A list of attorneys' disbursements is attached hereto as **Exhibit E**.

17.    The only persons interested in this proceeding entitled to notice thereof are the following:

| NAME | RELATIONSHIP | ADDRESS |
|---|---|---|
| Elizabeth V. Mejia | Spouse | 70 Oak Street, 1st Floor New Britain, CT 06051 |
| Greysi Saban | Infant-Daughter | 70 Oak Street, 1st Floor New Britain, CT 06051 |
| Nathaly Saban Vicente | Infant-Daughter | 70 Oak Street, 1st Floor New Britain, CT 06051 |
| Berkshire Hathaway Guard | Lien Holder | P.O. Box 1368 Wilkes-Barre, PA 18703 |

18.     The distributees herein are not recipients of any Federal, State or local welfare or public assistance.

19.     I respectfully request that the Court approve the proposed distribution of the settlement proceeds as follows:

a)      to ELIZABETH V. MEJIA as and for her share as spouse of the decedent the sum of **$501,755.73**; and

b)      to MetLife Assignment Company, the sum of **$450,000.00** to fund a structured settlement annuity for ELIZABETH V. MEJIA.   The future payments shall be as follows:

-   $1,958.95, payable monthly, guaranteed for 12 years, beginning on January 1, 2021, with the last guaranteed payment on December 1, 2032;

-   $250,000.00 payable at age 40 on October 2, 2032;

Annexed hereto are **Exhibit F** are the following documents relating to the above structured settlement annuity: Structured Settlement Affidavit, Proposed Settlement Agreement, Proposed Assignment Agreement, Proposed Sample Annuity Contract, Proposed Guaranty Agreement, and Rejected Alternative and/or competing proposals.

c)      to MetLife Assignment Company, the sum of **$425,000.00** to fund a structured settlement annuity for GREYSI SABAN.   The future payments shall be as follows:

-   $25,000.00 payable annually, guaranteed for 4 years, beginning on August 18, 2028, with the last guaranteed payment on August 18,

2031;

- $1,257.16 payable monthly beginning on August 18, 2032 for life with 30 years guaranteed;

Annexed hereto are **Exhibit F** are the following documents relating to the above structured settlement annuity: Structured Settlement Affidavit, Proposed Settlement Agreement, Proposed Assignment Agreement, Proposed Sample Annuity Contract, Proposed Guaranty Agreement, and Rejected Alternative and/or competing proposals.

    d)  to ELIZABETH V. MEJIA, as mother and natural guardian of GREYSI SABAN, an Infant, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, the sum of **$877.87**, to be deposited in the said bank in an account, or accounts, yielding the highest rate of interest available, in the name of the and natural guardian, in trust for the Infant and for the sole use and benefit of the Infant; and that the time deposit accounts and certificate of deposit accounts shall be continuously renewed at maturity at the highest rate of interest then available, but the date of maturity thereof shall not extend beyond the date upon which the Infant attains the age of eighteen (18) years; and that when no such time deposit or certificate of deposit account is available, then the accumulated funds shall be placed in the bank's insured money market account; and that no withdrawals shall be made from said account, or accounts, before the Infant reaches the age of eighteen (18) years, except upon further order of this Court;

    e)  to MetLife Assignment Company, the sum of **$425,000.00** to fund a

structured settlement annuity for NATHALY SABAN VICENTE.   The future payments shall be as follows:

- $25,000.00 payable annually, guaranteed for 4 years, beginning on August 28, 2032, with the last guaranteed payment on August 28, 2035;

- $1,459.35 payable monthly beginning on August 28, 2036 for life with 30 years guaranteed;

Annexed hereto are **Exhibit F** are the following documents relating to the above structured settlement annuity: Structured Settlement Affidavit, Proposed Settlement Agreement, Proposed Assignment Agreement, Proposed Sample Annuity Contract, Proposed Guaranty Agreement, and Rejected Alternative and/or competing proposals.

f)     to ELIZABETH V. MEJIA, as mother and natural guardian of NATHALY SABAN VICENTE, an Infant, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, the sum of **$877.87**, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, to be deposited in the said bank in an account, or accounts, yielding the highest rate of interest available, in the name of the and natural guardian, in trust for the Infant and for the sole use and benefit of the Infant; and that the time deposit accounts and certificate of deposit accounts shall be continuously renewed at maturity at the highest rate of interest then available, but the date of maturity thereof shall not extend beyond the date upon which the Infant attains the age of eighteen (18) years; and that

when no such time deposit or certificate of deposit account is available, then the accumulated funds shall be placed in the bank's insured money market account; and that no withdrawals shall be made from said account, or accounts, before the Infant reaches the age of eighteen (18) years, except upon further order of this Court;

g)    to BAMUNDO ZWAL & SCHERMERHORN, LLP as and for their disbursements the sum of **$23,585.38**;

h)    to BAMUNDO ZWAL & SCHERMERHORN, LLP as and for their attorneys' fee the sum of **$933,333.33**;

i)    to BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES in full satisfaction of Workers' Compensation lien the sum of **$39,569.82.**

20.    Plaintiff has not become interested in the within matter at the instance of the Defendant or Third-Party Defendants or anyone acting on Defendants' or Third-Party Defendants' behalf, directly or indirectly.

21.    No other action or proceeding has been commenced on behalf of the distributees as a result of the within claim for conscious pain and suffering or wrongful death.

WHEREFORE, I respectfully request an Order of this Court approving the settlement of the claim against the Defendants O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC for a sum of **$2,500,000.00;** Third-Party Defendants SESI CONSULTING ENGINEERS, P.C. and KENNETH J. QUAZZA, P.E. for a sum of **$180,000.00;** Third-Party Defendants NEW GENERATIONS MASONRY and MG COMMERCIAL CONCRETE by PENN-AMERICA

INSURANCE COMPANY for a sum of **$100,000.00**; and Third-Party Defendant BONDED

CONCRETE, INC. for a sum of **$20,000.00**, for a total of **$2,800,000.00**; apportioning the

settlement as set forth above, approving the payment of counsel fees and disbursements as well

as liens, and dismissing this action against the Defendants and Third-Party Defendants.

Dated: August 28, 2020

ELIZABETH V. MEJIA

Sworn to before me this
28ᵗʰ day of August 2020

Notary Public

IZABELA A. RUIZ
Notary Public, State of New York
No. 01RU6211985
Qualified in Queens County
Commission Expires Sept. 28, 20 21

Signature of Attorney:
Print Name:          MICHAEL C. ZWAL
Firm Name:           BAMUNDO ZWAL & SCHERMERHORN, LLP
                     (212) 608-8840
Address of Attorney: 111 JOHN STREET, SUITE 1100, NEW YORK, NY 10038

## VERIFICATION

STATE OF NEW YORK      )
                       :
COUNTY OF NEW YORK  )

    ELIZABETH V. MEJIA, being duly sworn, deposes and says:

    That she is the Plaintiff named in the foregoing petition, that she duly executed the same, and that the contents of said petition are true to her own knowledge except as to the facts alleged upon information and belief, and that as to those facts she believes same to be true.

_Elizabeth V. Mejia_
ELIZABETH V. MEJIA

Sworn to before me this
28th day of August 2020

_[signature]_
Notary Public

IZABELA A. RUIZ
Notary Public, State of New York
No. 01RU6211965
Qualified in Queens County
Commission Expires Sept. 28, 2021

`

**Exhibit A**

| DECREE GRANTING ADMINISTRATION OR PROBATE OF WILL PC-260  REV. 1/13 | STATE OF CONNECTICUT COURT OF PROBATE |
|---|---|

| COURT OF PROBATE, Berlin Probate Court | DISTRICT NO. PD08 |
|---|---|

ESTATE OF

**Maximiliano Saban   (17-00864) DECEASED**

| FIDUCIARY'S NAME AND ADDRESS | POSITION OF TRUST |
|---|---|
| Elizabeth Vicente Mejia, 70 Oak Street, New Britain, CT 06051 | Administratrix |

At a court of probate held at the place and time of hearing set by the court, together with any continuances thereof, as of record appears, on the petitioner's application for letters of administration be granted on said estate, all as in the application more fully appears.

PRESENT: Hon .Walter A. Clebowicz

After due hearing, THE COURT FINDS that:

The above-named decedent died on the following date August 03, 2017, domiciled at the time of death at 70 Oak Street, New Britain, CT 06051 and having estate whereof administration appertains to this court, and administration of the estate ought to be granted.

Notice was given in accordance with any order of notice previously entered.

The fiduciary named above has accepted the position of trust designated above.

Probate bond waived due to lack of assets.

And it is ORDERED AND DECREED that:

The application is approved, administration of the estate is granted to the fiduciary named above, and letters of administration are hereby issued to the fiduciary.

The court dispenses with the requirement of a probate bond.

And it is further ORDERED AND DECREED that:

Within two months from the date hereof, the fiduciary shall file a true and complete inventory of all property of the estate of the deceased.

Within six months from the decedent's date of death, the fiduciary shall file the Connecticut Estate Tax Return.

The fiduciary is allowed twelve months within which to settle the estate.

All claims against the above estate be presented pursuant to the provisions of C.G.S. Ch. 802b, Part VII.

*Notice of this decree be given by the judge, clerk or assistant clerk by regular mail, not more than TEN days from the date hereof.*

Dated at New Britain, Connecticut, on November 01, 2017.

Walter A. Clebowicz, Judge

As used in this decree, the word fiduciary includes the plural, where the context so requires.

DECREE GRANTING ADMINISTRATION OR PROBATE OF WILL
PC-260

DOH-1961 (8/2011)

RECORDED DISTRICT
302
1057

REGISTER NUMBER

NCHS

**NEW YORK STATE**
**DEPARTMENT OF HEALTH**
# CERTIFICATE OF DEATH

STATE FILE NUMBER

**DECEDENT**

| 1. NAME FIRST Maximiliano | MIDDLE | LAST Saban | 2. SEX: MALE ☒1 FEMALE ☐2 | 3A. DATE OF DEATH MONTH 8 DAY 3 YEAR 2017 | 3B. HOUR 16:30 p m |

4A. PLACE OF DEATH: (Check one) ☐ Hospital - OA ☐ Hospital - ER ☐ Hospital - Outpatient ☐ Hospital - Inpatient ☐ Nursing Home ☐ Private Residence ☐ Hospice Facility ☒ Other (Specify)

4B. FACILITY, DATE ADMITTED

4C. NAME OF FACILITY: (If not facility, give address) Dutchess Avenue

4D. LOCALITY: (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☐ Poughkeepsie

4E. COUNTY OF DEATH Dutchess

4F. MEDICAL RECORD # DC17-440

4G. WAS DECEDENT TRANSFERRED FROM ANOTHER INSTITUTION? NO ☒ YES ☐ (If yes, specify institution name, city or town, county and state)

5. DATE OF DEATH MONTH 8 DAY 16 YEAR 1989

6A. AGE IN YEARS: 28

6B. IF UNDER 1 YEAR ENTER: months days

6C. IF UNDER 1 YEAR ENTER: hours minutes

7A. CITY AND STATE OF BIRTH: (If not USA, Country and Region/Province) Guatemala

7B. IF UNDER 1 YEAR, NAME OF HOSPITAL OF BIRTH:

8. SERVED IN U.S. ARMED FORCES? (Specify years) NO ☒ YES ☐

9. DECEDENT OF HISPANIC ORIGIN? Check the boxes that best describe whether the decedent is Spanish/Hispanic/Latino.
☐ No, not Spanish/Hispanic/Latino   ☒ Yes, Mexican, Mexican American, Chicano
☐ Yes, Puerto Rican   ☐ Yes, Cuban
☐ Yes, Other Spanish/Hispanic/Latino (Specify)

10. DECEDENT'S RACE: Check one or more races to indicate what the decedent considered himself or herself to be:
☒ A White/Caucasian   ☐ B Black of African American   ☐ C Asian Indian   ☐ D Chinese
☐ E Filipino   ☐ F Japanese   ☐ G Korean   ☐ H Vietnamese
☐ I Native Hawaiian   ☐ J Guamanian or Chamorro   ☐ K Samoan
☐ American Indian or Alaska Native (specify)
☐ Other Asian (specify)
☐ Other Pacific Islander (specify)
☐ Other (specify)

11. DECEDENT'S EDUCATION: Check the box that best describes the highest degree or level of school completed at the time of death.
☐ 8th grade or less   ☒ 9th-12th grade, no diploma   ☐ High school graduate or GED
☐ Some college credit, but no degree   ☐ Associate degree   ☐ Bachelor's degree
☐ Master's degree   ☐ Doctorate/Professional degree

12. SOCIAL SECURITY NUMBER None

13. MARITAL STATUS: NEVER MARRIED ☐ MARRIED ☒ WIDOWED ☐ DIVORCED ☐ SEPARATED ☐

14. SURVIVING SPOUSE: Enter birth name of spouse. If married or separated, enter maiden surname. If married or separated, enter name of spouse. Elizabeth Vicente De Saban

15A. USUAL OCCUPATION: (Do not enter retired) Laborer

15B. KIND OF BUSINESS OR INDUSTRY: Construction

15C. NAME AND LOCALITY OF COMPANY OR FIRM: N/A

16A. RESIDENCE: (State or Country if not USA) CT

16B. County or Region/Province if not USA Hartford

16C. LOCALITY: (Check one and specify) CITY ☐ VILLAGE ☐ TOWN ☐ New Britain

16E. IF CITY VILLAGE, IS RESIDENCE WITHIN CITY OR VILLAGE LIMITS? ☐ YES ☐ NO, SPECIFY TOWN

16D. STREET AND NUMBER OF RESIDENCE 402 Ellis Street

16F. ZIP CODE 06051

**FAMILY**

17. BIRTH NAME OF FATHER/PARENT: FIRST Marcos MI A LAST Saban

18. BIRTH NAME OF MOTHER/PARENT: FIRST Nicolasa MI LAST Canel

**INFORMANT**

19A. NAME OF INFORMANT Elizabeth Saban

19B. MAILING ADDRESS: (include zip code) 402 Ellis Street New Britain, CT 06051

**DISPOSITION**

20A. ☒ ENTOMBMENT ☐ CREMATION ☐ REMOVAL ☐ DONATION method MONTH 8 DAY 12 YEAR 2017

20B. PLACE OF BURIAL, CREMATION, REMOVAL OR OTHER DISPOSITION Cementeria Naciona1 De Aldea Montitlor

20C. LOCATION: (City or town and state) San Juan Guatemala

21A. NAME AND ADDRESS OF FUNERAL HOME: Deltran Funeral Home 104 Main Street Hartford CT 06106

21B. REGISTRATION NUMBER 01713

22A. NAME OF FUNERAL DIRECTOR: Sean Doyle

22B. NAME OF FUNERAL DIRECTOR:

22C. REGISTRATION NUMBER: 11007

23A. SIGNATURE OF REGISTRAR: Cathiun A Sunslotto

23B. DATE FILED MONTH 8 DAY 7 YEAR 2017

23C. BURIAL OR REMOVAL PERMIT ISSUED BY: Dennis Rhym

23D. DATE ISSUED MONTH 8 DAY 7 YEAR 2017

**ITEMS 25 THRU 33 COMPLETED BY CERTIFYING PHYSICIAN – OR – CORONER/CORONER'S PHYSICIAN OR MEDICAL EXAMINER**

**CERTIFIER**

25A. CERTIFICATION: To the best of my knowledge, death occurred at the time, date and place and due to the causes stated.
Certifier's Name: Kia Newman MD   License No: 261177   Signature: [signature]   Month 08 Day 04 Year 2017

25B. Certifier's Title: ☐ Attending Physician ☐ Physician acting on behalf of Attending Physician ☐ Coroner ☒ Medical Examiner / Deputy Medical Examiner   488 Washington St. Poughkeepsie NY 12601

25C. If coroner is not a physician, enter Coroner's Physician's name & title:   License No:   Signature:   Month Day Year

25D. If certifier is not attending physician, enter Attending Physician's name & title:   License No:

26A. Attending physician attended deceased:   FROM Month Day Year   TO Month Day Year

26B. Deceased last seen alive by attending physician:   Month Day Year

26C. Pronounced Dead:   09/03 20 17 16:30 p

27. MANNER OF DEATH: ☐ NATURAL CAUSE ☒ ACCIDENT ☐ HOMICIDE ☐ SUICIDE ☐ UNDETERMINED CIRCUMSTANCES ☐ PENDING INVESTIGATION   CONFIDENTIAL

28. WAS CASE REFERRED TO CORONER OR MEDICAL EXAMINER? ☐ NO ☒ YES

29A. AUTOPSY? ☒ YES ☐ NO   29B. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH? ☒ YES ☐ NO

SEE INSTRUCTION SHEET FOR COMPLETING CAUSE OF DEATH   CONFIDENTIAL

**CAUSE OF DEATH**

30. DEATH WAS CAUSED BY: (ENTER ONLY ONE CAUSE PER LINE FOR (A), (B), AND (C).)

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

31. IMMEDIATE CAUSE (A) CRUSH AND BLUNT FORCE INJURIES

DUE TO OR AS A CONSEQUENCE OF:
(B)

DUE TO OR AS A CONSEQUENCE OF:
(C)

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO CAUSE GIVEN IN PART I (A).

DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ YES ☒ NO ☐ PROBABLY ☐ UNKNOWN

31A. INJURY DATE MONTH 8 DAY 3 YEAR 17   HOUR: 1545 m   31B. INJURY LOCALITY (City or town and county and state) Dutchess Poughkeepsie   31C. DESCRIBE HOW INJURY OCCURRED Crush/Blunt force/at Construction site   31D. PLACE OF INJURY Construction site   31E. INJURY AT WORK? ☒ YES ☐ NO

32. IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (specify)   33. WAS DECEDENT IN LAST 2 MONTHS? NO ☐ YES ☐   33A. IF FEMALE: ☐ Not pregnant within last year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within past year   33B. DATE OF DELIVERY: MONTH DAY YEAR

(Left margin, vertical text:)
For use by physician or institution   NAME OF DECEDENT Maximiliano Saban Canel   DATE OF DEATH 8-3-17   TIME OF DEATH 1630 PM

DocuGard #04550 contains a security pantograph, blue background, heat sensitive ink, coin reactive watermark, and interlocked printing on border.

**Exhibit B**

## SETTLEMENT AGREEMENT AND RELEASE

**WHEREAS**, on or about July 18, 2018 Elizabeth V. Mejia as Administrator of the Estate of Maximiliano Saban filed a complaint in the United States District Court, Southern District of New York under Docket No. 7:18-CV-06483, and then on or about August 27, 2018 an amended complaint was filed against The O'Neill Group-Dutton, LLC and Onekey, LLC (hereinafter collectively "Onekey") on behalf of Elizabeth V. Mejia, as Administrator of the Estate of Maximiliano Saban, and Elizabeth V. Mejia, Individually (hereinafter collectively "Plaintiffs" or "The Plaintiffs" or "Mejia"), and

**WHEREAS**, subsequently Onekey filed an answer to the amended complaint, as well as, third party complaints against SESI Consulting Engineers PC, and Kenneth J Quazza, P.E. (hereinafter collectively "SESI"), and New Generations Masonry (hereinafter "NG"), and MG Commercial Concrete (hereinafter "MG"), and Bonded Concrete Inc., (hereinafter "Bonded"), and

**WHEREAS**, subsequently the above-referenced third party defendants filed answers to the third party complaints with counter and cross-claims.

**WHEREAS**, Penn-America Insurance Company ("Penn"), issued an insurance policy or policies to NG and/or MG, but denied that any coverage applied to the claims brought against NG or MG by Onekey, or to Onekey as to the claims against them by Plaintiffs or Third-Party Defendants, and thus, Penn filed a declaratory judgment lawsuit also in United States District Court, Southern District of New York under Docket No. 7:19-CV-02315 (the "Penn-America action"), and

**WHEREAS**, Onekey, SESI, NG, MG, Bonded and Penn are collectively referred to as "Defendants" or "The Defendants", and

**WHEREAS**, the litigation under Docket No. 7:18-CV-6483, and the litigation under Docket No.: 7:19-CV-02315 were not consolidated, but they were case managed together by the Honorable Lisa Margaret Smith, U.S.M.J., and

**WHEREAS**, Mejia, Onekey, SESI, NG, MG, and Bonded (hereinafter "Parties" or "The Parties") and the Parties' insurers are desirous of settling any and all claims between and among The Parties as well as existing or potential future claims arising out of the insurance policies and/or indemnity obligations arising out of the alleged incident, and

**WHEREAS**, The Parties all agreed to submit this matter to non-binding mediation before Kenneth Grundstein from National Arbitration and Mediation ("NAM"), and

**WHEREAS**, as a result of a mediation session conducted on March 6, 2020, along with multiple communications between and among NAM, The Parties and their insurers, thereafter, The Parties were able to achieve a settlement of all of the claims between and among the Parties and their Insurers , and

**WHEREAS**, the Parties and their Insurers are desirous of ending the Mejia action, the Penn-America action and forever resolving all related existing or future litigation in any manner related thereto, thus,

**FOR GOOD, VALUABLE AND MUTUAL CONSIDERATION, THE RECEIPT OF WHICH IS HEREBY ACKNOLWEDGED, THE PARTIES AND THEIR INSURERS DO HEREBY AGREE AS FOLLOWS:**

1. Mejia will accept a total of $2.8 million to be paid as follows: (a) Onekey $2.5 million, SESI $180,000, MG $50,000, NG $50,000, and Bonded $20,000. Note that a portion of this settlement will be paid over time by employing the use of Structured Settlement Annuities which correspond with that portion's present cost. These Annuities will be facilitated through an A or A+ rated insurance carrier approved to do business in the states of New York and Connecticut. The specific terms of these Structured Settlement Annuities are detailed in an Addendum to Settlement Agreement and Release for Elizabeth V. Mejia, as Administrator of the Estate of Maximilio Saban ("Addendum"), which is incorporated by reference and made a part hereof.

2. Upon receipt of the payments referenced above by counsel for Mejia, The Parties and the Parties' Respective Insurers all release and forever discharge each other and all other insurers from any and all claims that were asserted, or that could or should have been asserted, in the two litigations filed in the United States District Court, Southern District of New York under Docket Numbers 7:18-CV-6483 and 7:19-CV-02315, and as to any potential related future claims between the Parties' Insurer(s), and these Mutual Releases between and among The Parties and their Insurers include, but are not limited to: (a) all claims of any type by Mejia arising out of the accident that occurred on or about August 3, 2017 at One Dutchess Avenue, Poughkeepsie, New York, (b) all claims of any type by any of The Parties against any of the other Parties for common law or contractual contribution or indemnity arising out of the alleged accident, (c) all claims of any type for insurance coverage from Penn, howsoever denominated, and as now or as may in the future exist arising out of the alleged accident, and (d) all claims of any type by Penn and/or Onekey and Onekey' s Insurers against any other insurer or Party for subrogation, breach of contract, contribution, indemnity, additional insured obligations, contractual indemnity, bad faith, or equitable subrogation, as related to policies of insurance issued to any of the Parties, the contracts between the Parties, and/or in any manner related to the Mejia action.

3. The rights and obligations of The Parties pursuant this Settlement Agreement also apply equally to (a) all Members, successors, principals, directors, owners, employees, agents, representatives, heirs, and assigns of The Parties, as well as, (b) the insurance carriers that provided coverage for claims in this litigation, provided a defense for any Party, with or without reservation of rights, and/or contributed to this settlement on behalf of any Party hereto, including but not limited to, (a) Technology Insurance Company and Amtrust Group, N.A. for Bonded Concrete, (b) Southwest Marine and General Insurance Company; Markel Service,

Incorporated as claims manager for Evanston Insurance Company, and, Evanston Insurance Company for Onekey, and (c) Penn-America for MG and NG.

4. Upon receipt by counsel for Mejia of the settlement payments referenced above, counsel for all of the Parties shall execute for filing with the United Stated District Court, Southern District of New York all appropriate Stipulations of Dismissal with Prejudice, with each Party to bear their own attorney's fees, and without costs.

5. It is hereby stipulated that the parties have sought to protect the interest of Medicare, and, therefore, it is not the purpose of this settlement agreement to shift responsibility of medical care in this matter to the Medicare program. The Plaintiff's decedent was not entitled to Medicare benefits and the plaintiff is not presently entitled to Medicare benefits. The Plaintiff asserts that this is true and correct. The Defendants are relying on the Plaintiff's assertion that plaintiff's decedent was not Medicare eligible and that she is not Medicare eligible. In the event that the Plaintiff is misrepresenting her Medicare eligibility, or that of plaintiff's decedent, the Plaintiff agrees to resolve any and all Medicare issues, including but not limited to Medicare Part A, B, C and/or D liens for past and future conditional payments, and the Plaintiff's counsel, if represented at the time of settlement, will act as a liaison between the Plaintiff and Medicare. The Plaintiff will hold harmless and indemnify The Defendants herein from any right of recovery asserted by Medicare for non-payment of any Medicare lien.

It is further understood and agreed that the Plaintiff will indemnify, hold harmless and defend The Defendants of and from any and all liability, actions, judgments or demands arising from or in any way connected to or with any subrogation claims, liens, or statutory liens (federal or state, specifically including, but not limited to, Medicare Part A/B/C/D liens for conditional payments or Medicaid liens or any other lien which may be made in the future against the payments described above for any service that may ultimately be provided in the future) for any compensation or medical payments due or claimed to be due now, or hereinafter, or paid under any law (state or federal), regulation (including but not limited to 42 C.F.R. § 411.24 et seq.) or contract arising as a result of or pertaining in any way to the matters referred to in this Release. The Plaintiff further agrees to pay any judgments, costs, and attorneys' fees resulting therefrom any actions, judgments and/or demands as described herein.

The Plaintiff also agrees to waive any and all potential/future claims against The Defendants arising out of any state or federal statute relating to medical care payments, including but not limited to any and all potential/future claims against Defendants pursuant to The Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b) et seq.

6. The Recitals set forth above are expressly: (a) adopted into this Agreement, and (b) expressly made a part of this Agreement, and (c) accepted by The Parties to this Agreement.

7. To the fullest extent permitted by law, The Parties agree that the existence, nature and terms of this Agreement are strictly confidential. No Party shall discuss, comment upon, disparage, or

disclose, directly or indirectly, any information regarding the negotiation or the events leading up to this Agreement, the substance of this Agreement, including, but not limited to, the consideration set forth herein, except (i) to The Parties' respective attorneys, accounting and financial advisors, taxing authorities, regulators, reinsurers or lenders; (ii) as otherwise required by law, or (iii) to enforce any provision of this Agreement. The Parties understand and agree that the confidentiality provision is a material element of this Agreement and that any breach of this Agreement would cause another Party irreparable injury. In the event that legal action is brought to enforce this confidentiality provision, the losing Party shall pay the prevailing Party's attorneys' fees and costs.

8. This Agreement is the product of arms-length negotiations and is not intended to, nor shall it be construed as, an admission of fault or liability by any Party or any Insurer as to its coverage obligations. The Parties and their Insurers agree that they are entering into this Agreement solely as a business accommodation for the purpose of settling certain issues between them and to avoid the cost of litigation or other proceedings, and without prejudice to their respective positions. The Parties and the Insurers agree that they shall not be deemed to have made any admission of any kind.

9. No change or modification of this Agreement shall be valid unless it is in writing and signed by The Parties and their Insurers.

10. INTENTIONALLY OMITTED

11. The Parties shall not make any oral or written, intentionally false statements to the public at large, or to the media, or on any web site on the internet, or on social media, for the express intended purpose of damaging the professional reputation and/or business of any other Party to this Agreement.

The non-disparagement clause does not apply in any manner to any written and/or oral statements made by any of The Parties required by law which the Party has a good faith belief is true, including but not limited to, in connection with current and/or future litigation, arbitration, administrative proceedings, government regulatory inspections or hearings (including applications relative to permits, approvals and similar matters relating to the development of the "One Dutchess Project"), or legal proceedings of any kind whatsoever.

This provision applies to all of The Parties, their principals, officers and shareholders, project managers and superintendents. In the event that legal action is brought to enforce this provision, the losing Party shall pay the prevailing Party's reasonable attorneys' fees and costs.

12. This Agreement shall be governed by and shall be construed in accordance with the laws of the State of New York.

13. Each Party and its Insurer expressly warrants that they presently hold the rights released herein and have not assigned any rights that are the subject of this Settlement Agreement and Release to others.

14. No Party shall assign or transfer their interest in this Agreement without the written consent of all of The Parties.

15. This Agreement shall be a complete defense barring any further litigation arising out of the Mejia action, the Penn-America action, or any claims between any of the Insurers in any manner related to the litigation, the accident, the contracts between the parties, or the insurance policies.

16. If any provision of this Agreement or any portion of any provision of this Agreement is declared void or unenforceable by any Court or tribunal having jurisdiction, then such provision or such portion of a provision shall be considered separate and apart from the remainder of this Agreement, which shall remain in full force and effect.

17. This Agreement may be executed in multiple counterparts, and all such counterparts shall collectively constitute one and the same Agreement. PDF signatures shall be deemed originals.

The individuals who have executed this Agreement on behalf of the respective Parties expressly represent and warrant that they are authorized to sign on behalf of each Party. This Agreement shall be binding upon and shall inure to the benefit of The Parties and their Insurers.

18. This Agreement, including the Addendum, constitutes the entire agreement between The Parties and their Insurers with respect to the subject matter hereof and supersedes all other prior discussions, agreements and understandings, both written and oral, between The Parties and their Insurers with respect thereto, and shall inure to the benefit of The Parties referenced herein, jointly and severally, and the executors, administrators, personal representatives, heirs, and successors and Insurers of each. No representations, warranties, or promises have been made or relied upon by any Party or their Insurers other than as expressly set forth herein. Counsel for each Party has participated in the drafting of this Agreement, and the language of this Agreement shall not presumptively be construed in favor of or against either of the Parties hereto or referenced herein.

19. Signatures

By: _Elizabeth V. Mejia_        Date: _7/29/20_
Elizabeth V. Mejia on behalf of Mejia

By: _____      Date: _____
Finbar O'Neill on behalf of Onekey

13. Each Party and its Insurer expressly warrants that they presently hold the rights released herein and have not assigned any rights that are the subject of this Settlement Agreement and Release to others.

14. No Party shall assign or transfer their interest in this Agreement without the written consent of all of The Parties.

15. This Agreement shall be a complete defense barring any further litigation arising out of the Mejia action, the Penn-America action, or any claims between any of the Insurers in any manner related to the litigation, the accident, the contracts between the parties, or the insurance policies.

16. If any provision of this Agreement or any portion of any provision of this Agreement is declared void or unenforceable by any Court or tribunal having jurisdiction, then such provision or such portion of a provision shall be considered separate and apart from the remainder of this Agreement, which shall remain in full force and effect.

17. This Agreement may be executed in multiple counterparts, and all such counterparts shall collectively constitute one and the same Agreement. PDF signatures shall be deemed originals.

The individuals who have executed this Agreement on behalf of the respective Parties expressly represent and warrant that they are authorized to sign on behalf of each Party. This Agreement shall be binding upon and shall inure to the benefit of The Parties and their Insurers.

18. This Agreement, including the Addendum, constitutes the entire agreement between The Parties and their Insurers with respect to the subject matter hereof and supersedes all other prior discussions, agreements and understandings, both written and oral, between The Parties and their Insurers with respect thereto, and shall inure to the benefit of The Parties referenced herein, jointly and severally, and the executors, administrators, personal representatives, heirs, and successors and Insurers of each. No representations, warranties, or promises have been made or relied upon by any Party or their Insurers other than as expressly set forth herein. Counsel for each Party has participated in the drafting of this Agreement, and the language of this Agreement shall not presumptively be construed in favor of or against either of the Parties hereto or referenced herein.

19. Signatures

By: _____          Date: _____
Elizabeth V. Mejia on behalf of Mejia

By: _____          Date: 3RD AuGUST 2020
Finbar O'Neill on behalf of Onekey

By: _____                    Date: 3 rd August 2020
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____                    Date: _____
Steve Byszewski on behalf of SESI

By: _____                    Date: _____
Kenneth Quazza , individually

By: _____                    Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____                    Date: _____
Guido Gonzaleson behalf of MG

By: _____                    Date: _____
Javier DeMattoon behalf of NG

By: _____                    Date: _____
Pat Greeleyon behalf of Penn

By: _____                    Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____                    Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.

**END OF DOCUMENT**

By: _____          Date: _____
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____          Date: _08/03/2020_____
Steve Byszewski on behalf of SESI

By: _____          Date: _____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____          Date: _____
Guido Gonzaleson behalf of MG

By: _____          Date: _____
Javier DeMattoon behalf of NG

By: _____          Date: _____
Pat Greeleyon behalf of Penn

By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____      Date: _____
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC


By: _____      Date: _____
Steve Byszewski on behalf of SESI

By: _____      Date: 8/3/2020
Kenneth Quazza , individually

By: _____      Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____      Date: _____
Guido Gonzales on behalf of MG

By: _____      Date: _____
Javier DeMatto on behalf of NG

By: _____      Date: _____
Pat Greeley on behalf of Penn

By: _____      Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____      Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____        Date: _____
Steve Byszewski on behalf of SESI

By: _____        Date: _____
Kenneth Quazza , individually

By: _____        Date: 7/29/2020
Thomas A. Clemente on behalf of Bonded

By: _____        Date: _____
Guido Gonzaleson behalf of MG

By: _____        Date: _____
Javier DeMattoon behalf of NG

By: _____        Date: _____
Pat Greeleyon behalf of Penn

By: _____        Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____        Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.

## END OF DOCUMENT

By: _____          Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC


By: _____          Date: _____
Steve Byszewski on behalf of SESI


By: _____          Date: _____
Kenneth Quazza , individually


By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded


By: _____          Date: 7/30/2020
Guido Gonzales on behalf of MG


By: _____          Date: _____
Javier DeMatto on behalf of NG


By: _____          Date: _____
Pat Greeley on behalf of Penn


By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company


By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____          Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC

By: _____          Date: _____
Steve Byszewski on behalf of SESI

By: _____          Date: _____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____          Date: _____
Guido Gonzales on behalf of MG

By: _____          Date: 07/30/20
Javier DeMatto on behalf of NG

By: _____          Date: _____
Pat Greeley on behalf of Penn

By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.

# END OF DOCUMENT

By: _____          Date: _____
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____          Date: _____
Steve Byszewski on behalf of SESI

By: _____          Date: _____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clementeon behalf of Bonded

By: _____          Date: _____
Guido Gonzaleson behalf of MG

By: _____          Date: _____
Javier DeMattoon behalf of NG

By: _____          Date: 8/7/20
Pat Greeley on behalf of Penn

By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


### END OF DOCUMENT

By: _____          Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC


By: _____          Date: _____
Steve Byszewski on behalf of SESI


By: _____          Date: _____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded


By: _____          Date: _____
Guido Gonzales on behalf of MG


By: _____          Date: _____
Javier DeMatto on behalf of NG


By: _____          Date: _____
Pat Greeley on behalf of Penn

By: *Joanne McGovern*                  Date: 07/17/2020
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company


By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____          Date: _____
Finbar O'Neill on behalf of ONeill
Group Dutton, LLC


By: _____          Date: _____
Steve Byszewski on behalf of SESI


By: _____          Date: _____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded


By: _____          Date: _____
Guido Gonzales on behalf of MG


By: _____          Date: _____
Javier DeMatteo on behalf of NG


By: _____          Date: _____
Pat Crosley on behalf of Penn


By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____          Date: 7-17-2020
_____ on behalf
of ____ Insurance Company


**END OF DOCUMENT**

ADDENDUM TO SETTLEMENT AGREEMENT AND RELEASE

FOR ELIZABETH V. MEJIA, AS ADMINISTRATOR OF THE ESTATE

OF MAXIMILIANO SABAN

1. <u>PAYMENTS</u>

In consideration of the Settlement Agreement and Release for Elizabeth V. Mejia, as Administrator of the Estate of Maximiliano Saban ("Plaintiff"), to which this document is attached, Evanston Insurance Company ("Evanston"), on behalf of OneKey, LLC, agrees to fund the annuity for a cost of One Million Three Hundred Thousand Dollars ($1,300,000.00), which will pay the future periodic payments ("Periodic Payments"), made according to the schedule as follows:

   i)   Payable to Elizabeth V. Mejia ("Payee"):

        Starting 01/01/2021, the sum of $1,958.95 payable monthly, guaranteed for twelve (12) years, with the last guaranteed payment on 12/01/2032; and

        Guaranteed lump sum of $250,000.00 payable on 10/02/2032.
        *End of payment schedule for Elizabeth V. Mejia.*

   ii)  Payable to Greysi Saban ("Payee"):

        Starting 08/18/2028, the sum of $25,000.00 payable annually, guaranteed for four (4) years, with the last guaranteed payment on 08/18/2031; and

        Starting 08/18/2032, the sum of $1,257.16 payable monthly for life, guaranteed for thirty (30) years.  The last guaranteed payment will be made on 07/18/2062; thereafter, payments will continue for the lifetime of Greysi Saban.
        *End of payment schedule for Greysi Saban.*

   iii) Payable to Nathaly Saban Vicente ("Payee"):

        Starting 08/28/2032, the sum of $25,000.00 payable annually, guaranteed for four (4) years, with the last guaranteed payment on 08/28/2035; and

        Starting 08/28/2036, the sum of $1,459.35 payable monthly for life, guaranteed for thirty (30) years.  The last guaranteed payment will be made on 07/28/2066; thereafter, payments will continue for the lifetime of Nathaly Saban Vicente.
        *End of payment schedule for Nathaly Saban Vicente.*

1

The cost of the Periodic Payments is disclosed above as a condition of settlement. No part of the cost of the Periodic Payments may be paid directly to Plaintiff or any Payee, inasmuch as the parties negotiated for a structured settlement and the Periodic Payments and all other sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

2. PLAINTIFF'S RIGHTS TO PAYMENTS

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by Plaintiff or any Payee; nor shall Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

3. QUALIFIED ASSIGNMENT

Plaintiff acknowledges and agrees that Evanston has elected to make a "qualified assignment," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of Evanston's liability to make the Periodic Payments set forth above to MetLife Assignment Company, Inc. ("Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Evanston (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

Such assignment, when made, shall be accepted by Plaintiff without right of rejection, and shall completely release and discharge Evanston from the Periodic Payments obligation assigned to the Assignee. Plaintiff recognizes that upon such assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of Evanston shall thereupon become final, irrevocable and absolute.

If a qualified assignment as described above is made, Elizabeth V. Mejia, Greysi Saban and Nathaly Saban Vicente shall be secured parties of the Assignee, as described in the Qualified Assignment Release and Pledge Agreement executed among Plaintiff, Evanston and the Assignee to effect the assignment. The qualified funding asset or assets purchased by the Assignee to fund the obligation assumed under the qualified assignment shall serve as security interest for the promise of the Assignee to make such payments. Except for the obligation to provide such security interest, the obligation of the Assignee to make such payments shall be no greater than the obligation of Evanston to make such payments under this Settlement Agreement.

4. RIGHT TO PURCHASE AN ANNUITY

Evanston, itself or through the Assignee reserve the right to fund the liability to make the Periodic Payments set forth above through the purchase of an annuity policy from Metropolitan Tower Life Insurance Company ("Annuity Issuer"). Evanston or the Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. Evanston or the Assignee shall have the

Annuity Issuer mail or electronically transfer payments directly to each of the Payee listed above. Plaintiff and/or each of the Payee listed above shall be responsible for maintaining a current mailing address and, if applicable, bank account information for each of the Payee listed above with the Assignee.

5.  BENEFICIARY

Any payments to be made after death of any Payee pursuant to the terms of this Settlement Agreement shall be made to the Estate of the Payee. After the age of majority, Payee may submit a change of beneficiary in writing to the Assignee. If no such Beneficiary has been designated, or if no such Contingent Beneficiary is living at the time of a Payee's death, then payments shall be made to the Estate of the deceased Payee. No designation of a Contingent Beneficiary and no revocation of any such designation, shall be effective unless it is in writing, in a form acceptable to the Assignee, as applicable, duly executed by the Payee and delivered to the Assignee, as applicable.

6.  DISCHARGE OF OBLIGATION

The obligation assumed by the Assignee to make each Periodic Payment shall be fully discharged upon mailing of a valid check or electronic equivalent funds transfer in the amount of such payment on or before the due date to the last address or account on record for each of the Payee listed above or their Beneficiary with the Annuity Issuer. If any of the Payee or Beneficiary notifies the Assignee that any check or electronic funds transfer was not received, then the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

Executed this 29th day of _____July_____, 20 20.


PLAINTIFF:        _Elizabeth V. Mejia_
                  Elizabeth V. Mejia, as Administrator of the
                  Estate of Maximiliano Saban

3

**Exhibit C**



**Subrogation Department**
**PO Box 1368**
**44 West Market Street**
**Wilkes-Barre, PA 18703**
**P: 800.673.2465**

Michael C. Zwal, Esq.                                              June 19, 2020
Bamundo, Zwal & Schermerhorn
111 John St., Suite 1100
New York, NY 10038

Claimant: Maximiliano Saban
Claim #: R2WC852036-001
Employer: MG Commercial Concrete LLC
Date of Loss: 08/03/2017

Dear Attorney Zwal,

In reference to the captioned workers' compensation claim, AmGuard Insurance Company hereby consents to the settlement of the third party action by the estate of Maximiliano Saban in the amount of $2,800,00.00, subject to the following terms:

AmGuard has made workers' compensation payments totaling $59,354.73, resulting in a gross Workers' Compensation lien in the amount of $59,354.73, and that after reducing this lien amount by AmGuard's responsibility to contribute toward attorney's fees, AmGuard's enforceable lien is $39,569.82.

AmGuard Insurance Company specifically preserves and maintains its right to a future offset/moratorium in the workers' compensation claim against all third party proceeds in accordance with the CT WC Statute and prevailing case law.

Upon conclusion of the third party claim, please forward AmGuard's net share, that being $39,569.82, along with a copy of the executed third party release, to AmGuard Insurance Company, PO Box 1368, Wilkes-Barre, PA 18703. Kindly contact me if you have any questions. Thank you for your professional cooperation.

Sincerely,

*Lisa Napersky*

Lisa Napersky, AIC, CSRP
Subrogation Supervisor, Workers Compensation
570-825-9900, ext. 1039
LNapersky@guard.com

Page **1** of **1**

**Exhibit D**

**BAMUNDO, ZWAL & SCHERMERHORN, LLP**
111 John Street, Suite 1100
New York, New York 10038

### RETAINER AGREEMENT

The undersigned, *Elizabeth Mejia*, hereby retains **Bamundo, Zwal & Schermerhorn, L.L.P.**, to prosecute or adjust a claim for damages arising from personal injuries sustained by the undersigned and/or *Maximiliano Saban* on *8/2/17*, and gives them the exclusive right to take all legal steps to enforce the said claims and agrees not to settle this action in any manner without their written consent and further authorizes all checks to be endorsed and deposited into an escrow account pending distribution.

In consideration of the services rendered and to be rendered by them, the undersigned hereby agrees to pay them, and they are authorized to retain out of the monies that may come into their hands, whether recovered by suit, settlement or otherwise, as follows :

_____✓___ **One-third (1/3) of the gross recovery.** I elect to have **Bamundo, Zwal & Schermerhorn, L.L.P.** advance the money for costs and expenses. I do not want to be billed for each disbursement as incurred and understand I am entitled to statements. The funds advanced may be borrowed by the Firm from a third party lender, and I will be notified of the interest rate and am entitled to receive statements upon request. I agree that the law firm will be reimbursed by me for all principal, interest and costs related to such advances at the conclusion of my case.

_____ **One-third (1/3) of the net recovery.** I elect to advance the money for the costs and expenses. I want to be billed for each disbursement incurred, and agree to pay these costs and expenses as they come due. Percentages shall be computed on the net sum recovered after deducting taxable costs and disbursements, including expenses for investigative-witness fees, or other services chargeable to the claim or prosecution of the action. In the event that I fail to timely pay these costs and expenses, and **Bamundo, Zwal & Schermerhorn, L.L.P.** chooses to advance these costs, I agree to be charged a legal fee of One-third (1/3) of the **gross** recovery, and that the law firm will be reimbursed by me for all principal, interest and costs related to such advances at the conclusion of my case.

These fees are subject to court order in infant or death actions or application to the Court for greater compensation in the event extraordinary services are required.

Liens or assignments or claims for hospital or medical care by doctors or of self-insurers or insured carriers shall not be deducted in computing the percentages and shall be chargeable to the client.

This retainer does not require **Bamundo, Zwal & Schermerhorn, L.L.P.** to undertake any appellate work. In the event any appeal is undertaken then the undersigned shall be liable in advance for all costs of the appeal, and may be subject to a separate retainer for the purposes of the appeal. If the undersigned retains a new attorney to process the appeal, or substitutes **Bamundo, Zwal & Schermerhorn, L.L.P.**, then **Bamundo, Zwal & Schermerhorn, L.L.P.**, shall nonetheless be entitled to its fee under this agreement plus all costs and disbursements incurred.

Dated:

New York, New York
_____10/6_____ 20_17_     x_Elizabeth V. Mejia_ (L.S.)

_____(L.S.)

**SUBJECT TO INVESTIGATION.  (Please Initial Agreement)** _____  _____

NUNC PRO TUNC
**RETAINER STATEMENT**

For Office Use

TO: OFFICE OF COURT ADMINISTRATION
OF THE STATE OF NEW YORK
Post Office Box 2016
Church Street Station
New York, NY   10008

1. Date of retainer agreement: 9/25/2017

2. Terms of compensation: thirty-three and one-third (33 1/3%) per cent of the sum recovered.

3. Name and home address of client: ELIZABETH MEJIA as Administrator of the Estate of MAXIMILIANO

SABAN, 70 Oak Street, 1st Floor, New Britain, CT 06051

4. If engaged by an attorney, name and office address of retaining attorney: N/A

5. If claim for personal injuries, wrongful death or property damage, date and place of occurrence: August 3, 2017,

One Dutchess Avenue, Poughkeepsie, New York

6. If a condemnation or change of grade proceeding: N/A

7. Name, address, occupation and relationship of person referring the client: prior client

Dated: New York, New York
March 9, 2018

State of New York                              )
                                               :ss.
County of New York                            )

MICHAEL C. ZWAL, affirms the following under
penalty of perjury.   That due to clerical oversight this
Retainer Statement was not timely filed.   I hereby
request that same be filed nunc pro tunc.

Dated:   New York, New York
March 9, 2018

_____
MICHAEL C. ZWAL

Our File No: 22937 RR

Yours, etc.

_____
Signature of Attorney

MICHAEL C. ZWAL
Attorney

Bamundo, Zwal & Schermerhorn, LLP
111 John Street, New York, NY 10038

ffice and P. O. Address

1 Dist. 1 Dept.   New York County

*Set forth particulars as to the fee arrangement, the type of services to be rendered in the matter, the code number
assigned to the statement of retainer filed by the retaining attorney and the date when said statement of retainer was
filed.

**Exhibit E**

## DISBURSEMENTS

| Disbursement Type | Paid to | Amount |
|---|---|---|
| Case expense interest and fees | Esquire Bank | $640.19 |
| Court Reporter | U.S. Legal Support | $1,341.71 |
| Expert | Sobel Tinari Economics Group | $5,300.00 |
| Mediation | NAM | $1,318.00 |
| Court Reporter | DEITZ Court Reporting | $4,365.74 |
| Expert | Thanning, Lone, M.D. | $9,000.00 |
| Hotel for Plaintiff | Holiday Inn | $407.42 |
| Copies of Photographs | ACRO Photo Print, Inc. | $127.87 |
| Search | PACER | $66.90 |
| Travel to OSHA hearings in D.C. | Joshua Maze | $246.95 |
| Procer Server | Intercounty Judicial Services | $273.60 |
| Index Number | United State Disctrict Court: Southern District | $400.00 |
| Ambulance Call Report | Mobile Life Support | $35.00 |
| Autopsy Report | Dutchess County ME | $62.00 |

| **TOTAL** | | **$23,585.38** |
|---|---|---|

**Exhibit F**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH V. MEJIA as Administrator of the Estate of
MAXIMILIANO SABAN, and ELIZABETH V. MEJIA,
Individually,

|                      | DOCKET NO. |
|----------------------|------------|
| Plaintiff,           | 7:18-CV-6483 |

-against-

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

Defendants.

**STRUCTURED
SETTLEMENT
AFFIDAVIT**

---

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

Third-Party Plaintiff,

-against-

SESI CONSULTING ENGINEERS, P.C., KENNETH J.
QUAZZA, P.E., NEW GENERATIONS MASONRY, MG
COMMERCIAL CONCRETE, BONDED CONCRETE, INC.,

Third-Party Defendant.

---

STATE OF NEW YORK
COUNTY OF ROCKLAND

I, Brett Newman, from The Newman Structured Settlement Group, acting as structured settlement consultant in the within matter hereby warrant and represent, under oath, having first been duly sworn, the following facts to be true, complete and accurate to the best of my knowledge, information and belief:

1.    No rebates, service fees, administrative fees, or other financial consideration of any kind or in any amount has been paid; will be paid or has been promised to be paid to any party, insurer, attorney, guardian ad litem, or any other person, firm or corporation associated with this case by me or by my above stated company, either directly or indirectly, by virtue of the structured settlement, or otherwise, relating to this matter;

2.    The cost to the defendants and/or casualty insurers of the structured settlement portion of the settlement in this case is ONE MILLIONS THREE HUNDREND THOUSAND DOLLARS ($1,300,000.00) inclusive of any applicable qualified assignment fee; and this cost to purchase the proposed annuity was arrived at after a survey of the market of annuity providers in order to confirm and obtain the best value (price/quality) for the periodic payment plan now recommended.

3.   The defendant and/or Insurer will make the following future periodic payments as follows:

    I.   $450,000.00 will be used for Structured Settlement Benefits payable to Elizabeth Mejia as follows:

        a.   $1,958.95, payable monthly, guaranteed for 12 years, beginning on January 1, 2021, with the last guaranteed payment on December 1, 2032

        b.   $250,000.00 payable at age 40 on October 2, 2032

    II.   $425,000.00 will be used for Structured Settlement Benefits payable to Greysi Saban as follows:

        a.   $25,000.00 payable annually, guaranteed for 4 years, beginning on August 18, 2028, with the last guaranteed payment on August 18, 2031

        b.   $1,257.16 payable monthly beginning on August 18, 2032 for life with 30 years guaranteed

    III.   $425,000.00 will be used for Structured Settlement Benefits payable to Nathaly Saban as follows:

        a.   $25,000.00 payable annually, guaranteed for 4 years, beginning on August 28, 2032, with the last guaranteed payment on August 28, 2035

        b.   $1,459.35 payable monthly beginning on August 28, 2036 for life with 30 years guaranteed

4.   The obligation of defendant and/or Insurer to make the above future periodic payments will be assigned to MetLife Assignment Company, the assignee may fund the obligation assumed by the purchase of an annuity from Metropolitan Tower Life Insurance Company, an A.M Best Company rates A+ insurer. A guarantee letter will be issued by Metropolitan Tower Life Insurance Company to guarantee the performance of such assignee.

5.   The Annuity Issuer company above-named is licensed to issue insurance annuity products in the State of New York.

6.   The standard industry commission that The Newman Structured Settlement Group is receiving in this case is based on 2% of the premium of $1,300,000.00 and Brant Hickey Settlements is receiving commission based on 2% of the premium of $1,300,000.00. This commission will be paid by Metropolitan Tower Life Insurance Company the life insurer issuing the policy.

7.   The annuities being provided in this case are based upon guaranteed life contingent payments for the infant plaintiffs Greysi Saban and Nathaly Saban who are presently 10 and 6 respectively, having been born on August 18, 2010 and August 28, 2014. The annuity cost set forth in paragraph "3" above reflects this life contingent annuity cost.

8.   No medical underwriting was provided on this case as there are no mortality issues for the life contingent benefits.

9.   No present value calculations were provided in this case. All illustrations provided were based on actual cost only;

10. Neither I nor The Newman Structured Settlement Group is an in-house broker of any party or casualty carrier involved in the settlement; nor am I or said company affiliated with or an "exclusive" broker of any party or casualty carrier involved in the settlement herein.

11. Neither I nor the Newman Structured Settlement Group will, without the express consent of the plaintiff and/or the plaintiff's representative and the prior written approval of this court:

    a. Provide any information about this settlement to any factoring company for any purpose; or

    b. Solicit the plaintiff or the plaintiff's family on behalf of any factoring company for any purpose, including but not limited to, the proposed sale of plaintiff's future periodic payments nor will I or The Newman Structured Settlement Group participate, assist, promote or aid in such solicitation by any person, firm, corporation or entity; or

    c. Seek or accept any consideration, financial or otherwise, directly or indirectly from a factoring company.

12. The following documents have been annexed as exhibits to the application made to this court for the approval of the recommended settlement proposal:

| | |
|---|---|
| Exhibit A | Proposed Settlement Agreement |
| Exhibit B | Proposed Assignment Agreement |
| Exhibit C | Proposed Sample Annuity Contract |
| Exhibit D | Proposed Guaranty Agreement |
| Exhibit E | Rejected Alternative and/or competing proposals |

THIS STRUCTURED SETTLEMENT AFFIDAVIT IS PROVIDED TO THE PARTIES TO THE SETTLEMENT HEREIN WITHOUT COST AND WITH THE EXPRESS PURPOSE OF INDUCING THE PLAINTIFF(S), THE DEFENDANT(S), AND ALL PARTICIPATING INSURERS TO ENTER INTO AND/OR PARTICIPATE IN FUNDING THE STRUCTURED SETTLEMENT AGREED UPON IN THIS CASE. THE STATEMENTS SET FORTH HEREIN CONSTITUTE AFFIRMATIVE REPRESENTATIONS AND WARRANTIES BY THE UNDERSIGNED STRUCTURED SETTLEMENT CONSULTANT.

BRETT NEWMAN

Sworn to before me this
_1_ day of _July_, 2020

Notary Public
Commission Expires

AMIE VALOIS
Notary Public, State of New York
Qualified in Rockland County
No. 01VA6270781
Commission Expires October 22, 2020

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

**WHEREAS**, on or about July 18, 2018 Elizabeth V. Mejia as Administrator of the Estate of Maximiliano Saban filed a complaint in the United States District Court, Southern District of New York under Docket No. 7:18-CV-06483, and then on or about August 27, 2018 an amended complaint was filed against The O'Neill Group-Dutton, LLC and Onekey, LLC (hereinafter collectively "Onekey") on behalf of Elizabeth V. Mejia, as Administrator of the Estate of Maximiliano Saban, and Elizabeth V. Mejia, Individually (hereinafter collectively "Plaintiffs" or "The Plaintiffs" or "Mejia), and

**WHEREAS**, subsequently Onekey filed an answer to the amended complaint, as well as, third party complaints against SESI Consulting Engineers PC, and Kenneth J Quazza, P.E. (hereinafter collectively "SESI"), and New Generations Masonry (hereinafter "NG"), and MG Commercial Concrete (hereinafter "MG"), and Bonded Concrete Inc., (hereinafter "Bonded"), and

**WHEREAS**, subsequently the above-referenced third party defendants filed answers to the third party complaints with counter and cross-claims.

**WHEREAS**, Penn-America Insurance Company ("Penn"), issued an insurance policy or policies to NG and/or MG, but denied that any coverage applied to the claims brought against NG or MG by Onekey, or to Onekey as to the claims against them by Plaintiffs or Third-Party Defendants, and thus, Penn filed a declaratory judgment lawsuit also in United States District Court, Southern District of New York under Docket No. 7:19-CV-02315 (the "Penn-America action"), and

**WHEREAS**, Onekey, SESI, NG, MG, Bonded and Penn are collectively referred to as "Defendants" or "The Defendants", and

**WHEREAS**, the litigation under Docket No. 7:18-CV-6483, and the litigation under Docket No.: 7:19-CV-02315 were not consolidated, but they were case managed together by the Honorable Lisa Margaret Smith, U.S.M.J., and

**WHEREAS**, Mejia, Onekey, SESI, NG, MG, and Bonded (hereinafter "Parties" or "The Parties") and the Parties' insurers are desirous of settling any and all claims between and among The Parties as well as existing or potential future claims arising out of the insurance policies and/or indemnity obligations arising out of the alleged incident, and

**WHEREAS**, The Parties all agreed to submit this matter to non-binding mediation before Kenneth Grundstein from National Arbitration and Mediation ("NAM"), and

**WHEREAS**, as a result of a mediation session conducted on March 6, 2020, along with multiple communications between and among NAM, The Parties and their insurers, thereafter, The Parties were able to achieve a settlement of all of the claims between and among the Parties and their Insurers , and

**WHEREAS**, the Parties and their Insurers are desirous of ending the Mejia action, the Penn-America action and forever resolving all related existing or future litigation in any manner related thereto, thus,

**FOR GOOD, VALUABLE AND MUTUAL CONSIDERATION, THE RECEIPT OF WHICH IS HEREBY ACKNOLWEDGED, THE PARTIES AND THEIR INSURERS DO HEREBY AGREE AS FOLLOWS:**

1. Mejia will accept a total of $2.8 million to be paid as follows: (a) Onekey $2.5 million, SESI $180,000, MG $50,000,  NG $50,000, and Bonded $20,000. Note that a portion of this settlement will be paid over time by employing the use of Structured Settlement Annuities which correspond with that portion's present cost.  These Annuities will be facilitated through an A or A+ rated insurance carrier approved to do business in the states of New York and Connecticut. The specific terms of these Structured Settlement Annuities are detailed in an Addendum to Settlement Agreement and Release for Elizabeth V. Mejia, as Administrator of the Estate of Maximilio Saban ("Addendum"), which is incorporated by reference and made a part hereof.

2. Upon receipt of the payments referenced above by counsel for Mejia, The Parties and the Parties' Respective Insurers all release and forever discharge each other and all other insurers from any and all claims that were asserted, or that could or should have been asserted, in the two litigations filed in the United States District Court, Southern District of New York under Docket Numbers 7:18-CV-6483 and 7:19-CV-02315, and as to any potential related future claims between the Parties' Insurer(s), and these Mutual Releases between and among The Parties and their Insurers include, but are not limited to: (a) all claims of any type by Mejia arising out of the accident that occurred on or about August 3, 2017 at One Dutchess Avenue, Poughkeepsie, New York,  (b) all claims of any type by any of The Parties against any of the other Parties for common law or contractual contribution or indemnity arising out of the alleged accident, (c) all claims of any type for insurance coverage from Penn, howsoever denominated, and as now or as may in the future exist arising out of the alleged accident, and (d) all claims of any type by Penn and/or Onekey and Onekey' s Insurers against any other insurer or Party for subrogation, breach of contract, contribution, indemnity, additional insured obligations, contractual indemnity, bad faith, or equitable subrogation, as related to policies of insurance issued to any of the Parties, the contracts between the Parties, and/or in any manner related to the Mejia action.

3. The rights and obligations of The Parties pursuant this Settlement Agreement also apply equally to (a) all Members, successors, principals, directors, owners, employees, agents, representatives, heirs, and assigns of The Parties, as well as, (b) the insurance carriers that provided coverage for claims in this litigation, provided a defense for any Party, with or without reservation of rights, and/or contributed to this settlement on behalf of any Party hereto, including but not limited to, (a) Technology Insurance Company and Amtrust Group, N.A. for Bonded Concrete, (b) Southwest Marine and General Insurance Company; Markel Service,

Incorporated as claims manager for Evanston Insurance Company, and, Evanston Insurance Company for Onekey, and (c) Penn-America for MG and NG.

4. Upon receipt by counsel for Mejia of the settlement payments referenced above, counsel for all of the Parties shall execute for filing with the United Stated District Court, Southern District of New York all appropriate Stipulations of Dismissal with Prejudice, with each Party to bear their own attorney's fees, and without costs.

5. It is hereby stipulated that the parties have sought to protect the interest of Medicare, and, therefore, it is not the purpose of this settlement agreement to shift responsibility of medical care in this matter to the Medicare program. The Plaintiff's decedent was not entitled to Medicare benefits and the plaintiff is not presently entitled to Medicare benefits. The Plaintiff asserts that this is true and correct. The Defendants are relying on the Plaintiff's assertion that plaintiff's decedent was not Medicare eligible and that she is not Medicare eligible. In the event that the Plaintiff is misrepresenting her Medicare eligibility, or that of plaintiff's decedent, the Plaintiff agrees to resolve any and all Medicare issues, including but not limited to Medicare Part A, B, C and/or D liens for past and future conditional payments, and the Plaintiff's counsel, if represented at the time of settlement, will act as a liaison between the Plaintiff and Medicare. The Plaintiff will hold harmless and indemnify The Defendants herein from any right of recovery asserted by Medicare for non-payment of any Medicare lien.

It is further understood and agreed that the Plaintiff will indemnify, hold harmless and defend The Defendants of and from any and all liability, actions, judgments or demands arising from or in any way connected to or with any subrogation claims, liens, or statutory liens (federal or state, specifically including, but not limited to, Medicare Part A/B/C/D liens for conditional payments or Medicaid liens or any other lien which may be made in the future against the payments described above for any service that may ultimately be provided in the future) for any compensation or medical payments due or claimed to be due now, or hereinafter, or paid under any law (state or federal), regulation (including but not limited to 42 C.F.R. § 411.24 et seq.) or contract arising as a result of or pertaining in any way to the matters referred to in this Release. The Plaintiff further agrees to pay any judgments, costs, and attorneys' fees resulting therefrom any actions, judgments and/or demands as described herein.

The Plaintiff also agrees to waive any and all potential/future claims against The Defendants arising out of any state or federal statute relating to medical care payments, including but not limited to any and all potential/future claims against Defendants pursuant to The Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b) et seq.

6. The Recitals set forth above are expressly: (a) adopted into this Agreement, and (b) expressly made a part of this Agreement, and (c) accepted by The Parties to this Agreement.

7. To the fullest extent permitted by law, The Parties agree that the existence, nature and terms of this Agreement are strictly confidential. No Party shall discuss, comment upon, disparage, or

disclose, directly or indirectly, any information regarding the negotiation or the events leading up to this Agreement, the substance of this Agreement, including, but not limited to, the consideration set forth herein, except (i) to The Parties' respective attorneys, accounting and financial advisors, taxing authorities, regulators, reinsurers or lenders; (ii) as otherwise required by law, or (iii) to enforce any provision of this Agreement. The Parties understand and agree that the confidentiality provision is a material element of this Agreement and that any breach of this Agreement would cause another Party irreparable injury. In the event that legal action is brought to enforce this confidentiality provision, the losing Party shall pay the prevailing Party's attorneys' fees and costs.

8. This Agreement is the product of arms-length negotiations and is not intended to, nor shall it be construed as, an admission of fault or liability by any Party or any Insurer as to its coverage obligations. The Parties and their Insurers agree that they are entering into this Agreement solely as a business accommodation for the purpose of settling certain issues between them and to avoid the cost of litigation or other proceedings, and without prejudice to their respective positions. The Parties and the Insurers agree that they shall not be deemed to have made any admission of any kind.

9. No change or modification of this Agreement shall be valid unless it is in writing and signed by The Parties and their Insurers.

10. INTENTIONALLY OMITTED

11. The Parties shall not make any oral or written, intentionally false statements to the public at large, or to the media, or on any web site on the internet, or on social media, for the express intended purpose of damaging the professional reputation and/or business of any other Party to this Agreement.

The non-disparagement clause does not apply in any manner to any written and/or oral statements made by any of The Parties required by law which the Party has a good faith belief is true, including but not limited to, in connection with current and/or future litigation, arbitration, administrative proceedings, government regulatory inspections or hearings (including applications relative to permits, approvals and similar matters relating to the development of the "One Dutchess Project"), or legal proceedings of any kind whatsoever.

This provision applies to all of The Parties, their principals, officers and shareholders, project managers and superintendents. In the event that legal action is brought to enforce this provision, the losing Party shall pay the prevailing Party's reasonable attorneys' fees and costs.

12. This Agreement shall be governed by and shall be construed in accordance with the laws of the State of New York.

13. Each Party and its Insurer expressly warrants that they presently hold the rights released herein and have not assigned any rights that are the subject of this Settlement Agreement and Release to others.

14. No Party shall assign or transfer their interest in this Agreement without the written consent of all of The Parties.

15. This Agreement shall be a complete defense barring any further litigation arising out of the Mejia action, the Penn-America action, or any claims between any of the Insurers in any manner related to the litigation, the accident, the contracts between the parties, or the insurance policies.

16. If any provision of this Agreement or any portion of any provision of this Agreement is declared void or unenforceable by any Court or tribunal having jurisdiction, then such provision or such portion of a provision shall be considered separate and apart from the remainder of this Agreement, which shall remain in full force and effect.

17. This Agreement may be executed in multiple counterparts, and all such counterparts shall collectively constitute one and the same Agreement. PDF signatures shall be deemed originals.

The individuals who have executed this Agreement on behalf of the respective Parties expressly represent and warrant that they are authorized to sign on behalf of each Party. This Agreement shall be binding upon and shall inure to the benefit of The Parties and their Insurers.

18. This Agreement, including the Addendum, constitutes the entire agreement between The Parties and their Insurers with respect to the subject matter hereof and supersedes all other prior discussions, agreements and understandings, both written and oral, between The Parties and their Insurers with respect thereto, and shall inure to the benefit of The Parties referenced herein, jointly and severally, and the executors, administrators, personal representatives, heirs, and successors and Insurers of each. No representations, warranties, or promises have been made or relied upon by any Party or their Insurers other than as expressly set forth herein. Counsel for each Party has participated in the drafting of this Agreement, and the language of this Agreement shall not presumptively be construed in favor of or against either of the Parties hereto or referenced herein.

19. Signatures

By: _Elizabeth V. Mejia_                     Date: _7/29/20_
Elizabeth V. Mejia on behalf of Mejia


By: _____                   Date: _____
Finbar O'Neill on behalf of Onekey

13. Each Party and its Insurer expressly warrants that they presently hold the rights released herein and have not assigned any rights that are the subject of this Settlement Agreement and Release to others.

14. No Party shall assign or transfer their interest in this Agreement without the written consent of all of The Parties.

15. This Agreement shall be a complete defense barring any further litigation arising out of the Mejia action, the Penn-America action, or any claims between any of the Insurers in any manner related to the litigation, the accident, the contracts between the parties, or the insurance policies.

16. If any provision of this Agreement or any portion of any provision of this Agreement is declared void or unenforceable by any Court or tribunal having jurisdiction, then such provision or such portion of a provision shall be considered separate and apart from the remainder of this Agreement, which shall remain in full force and effect.

17. This Agreement may be executed in multiple counterparts, and all such counterparts shall collectively constitute one and the same Agreement. PDF signatures shall be deemed originals.

The individuals who have executed this Agreement on behalf of the respective Parties expressly represent and warrant that they are authorized to sign on behalf of each Party. This Agreement shall be binding upon and shall inure to the benefit of The Parties and their Insurers.

18. This Agreement, including the Addendum, constitutes the entire agreement between The Parties and their Insurers with respect to the subject matter hereof and supersedes all other prior discussions, agreements and understandings, both written and oral, between The Parties and their Insurers with respect thereto, and shall inure to the benefit of The Parties referenced herein, jointly and severally, and the executors, administrators, personal representatives, heirs, and successors and Insurers of each. No representations, warranties, or promises have been made or relied upon by any Party or their Insurers other than as expressly set forth herein. Counsel for each Party has participated in the drafting of this Agreement, and the language of this Agreement shall not presumptively be construed in favor of or against either of the Parties hereto or referenced herein.

19. Signatures

By: _____            Date: _____
Elizabeth V. Mejia on behalf of Mejia

By: _____            Date: 3RD AUGUST 2020
Finbar O'Neill on behalf of Onekey

By: _____          Date: _2_ pᴅ AᴜGᴜsᴛ 2020
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____          Date: _____
Steve Byszewski on behalf of SESI

By: _____          Date: _____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____          Date: _____
Guido Gonzaleson behalf of MG

By: _____          Date: _____
Javier DeMattoon behalf of NG

By: _____          Date: _____
Pat Greeleyon behalf of Penn

By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.

## END OF DOCUMENT

By: _____   Date: _____
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____   Date: _08/03/2020_____
Steve Byszewski on behalf of SESI

By: _____   Date: _____
Kenneth Quazza , individually

By: _____   Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____   Date: _____
Guido Gonzaleson behalf of MG

By: _____   Date: _____
Javier DeMattoon behalf of NG

By: _____   Date: _____
Pat Greeleyon behalf of Penn

By: _____   Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____   Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____          Date: _____
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC


By: _____          Date: _____
Steve Byszewski on behalf of SESI

By: _____          Date: _8/3/2020_____
Kenneth Quazza , individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____          Date: _____
Guido Gonzales on behalf of MG


By: _____          Date: _____
Javier DeMattoo on behalf of NG


By: _____          Date: _____
Pat Greeley on behalf of Penn


By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company


By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____     Date: _____
Steve Byszewski on behalf of SESI

By: _____     Date: _____
Kenneth Quazza , individually

By: _____     Date: 7/29/2020
Thomas A. Clemente on behalf of Bonded

By: _____     Date: _____
Guido Gonzaleson behalf of MG

By: _____     Date: _____
Javier DeMattoon behalf of NG

By: _____     Date: _____
Pat Greeleyon behalf of Penn

By: _____     Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____     Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____          Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC


By: _____          Date: _____
Steve Byszewski on behalf of SESI


By: _____          Date: _____
Kenneth Quazza , individually


By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded


By: _____          Date: 7/30/2020
Guido Gonzales on behalf of MG


By: _____          Date: _____
Javier DeMatto on behalf of NG


By: _____          Date: _____
Pat Greeley on behalf of Penn


By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company


By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____          Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC

By: _____          Date: _____
Steve Byszewski on behalf of SESI

By: _____          Date: _____
Kenneth Quazza , Individually

By: _____          Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____          Date: _____
Guido Gonzales on behalf of MG

By: _____          Date: 07/30/20
Javier DeMatto on behalf of NG

By: _____          Date: _____
Pat Greeley on behalf of Penn

By: _____          Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____          Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.

**END OF DOCUMENT**

By: _____     Date: _____
Finbar O'Neill on behalf of The O'Neill
Group-Dutton, LLC

By: _____     Date: _____
Steve Byszewski on behalf of SESI

By: _____     Date: _____
Kenneth Quazza , individually

By: _____     Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____     Date: _____
Guido Gonzales on behalf of MG

By: _____     Date: _____
Javier DeMattoon behalf of NG

By: _Patrick Greeley_             Date: _8/7/20_
Pat Greeley on behalf of Penn

By: _____     Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____     Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.

**END OF DOCUMENT**

By: _____     Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC

By: _____     Date: _____
Steve Byszewski on behalf of SESI

By: _____     Date: _____
Kenneth Quazza , individually

By: _____     Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____     Date: _____
Guido Gonzales on behalf of MG

By: _____     Date: _____
Javier DeMatto on behalf of NG

By: _____     Date: _____
Pat Greeley on behalf of Penn

By: *Joanne Mcgovern*     Date: 07/17/2020
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____     Date: _____
Sheri-Ann Marcinkiewicz on behalf
of Evanston Insurance Company.


**END OF DOCUMENT**

By: _____     Date: _____
Finbar O'Neill on behalf of ONeill
Group-Dutton, LLC

By: _____     Date: _____
Steve Byszawski on behalf of SESI

By: _____     Date: _____
Kenneth Quazza, individually

By: _____     Date: _____
Thomas A. Clemente on behalf of Bonded

By: _____     Date: _____
Guido Gonzales on behalf of MG

By: _____     Date: _____
Javier DeMatto on behalf of NG

By: _____     Date: _____
Pat Greeley on behalf of Penn

By: _____     Date: _____
JoAnne McGovern on behalf of Southwest
Marine and General Insurance Company

By: _____     Date: 7-17-2020
Scott Amy Information on behalf
of Freedom Insurance Company

**END OF DOCUMENT**

ADDENDUM TO SETTLEMENT AGREEMENT AND RELEASE
FOR ELIZABETH V. MEJIA, AS ADMINISTRATOR OF THE ESTATE
OF MAXIMILIANO SABAN

1. PAYMENTS

In consideration of the Settlement Agreement and Release for Elizabeth V. Mejia, as Administrator of the Estate of Maximiliano Saban ("Plaintiff"), to which this document is attached, Evanston Insurance Company ("Evanston"), on behalf of OneKey, LLC, agrees to fund the annuity for a cost of One Million Three Hundred Thousand Dollars ($1,300,000.00), which will pay the future periodic payments ("Periodic Payments"), made according to the schedule as follows:

   i)    Payable to Elizabeth V. Mejia ("Payee"):

        Starting 01/01/2021, the sum of $1,958.95 payable monthly, guaranteed for twelve (12) years, with the last guaranteed payment on 12/01/2032; and

        Guaranteed lump sum of $250,000.00 payable on 10/02/2032.
        *End of payment schedule for Elizabeth V. Mejia.*

   ii)   Payable to Greysi Saban ("Payee"):

        Starting 08/18/2028, the sum of $25,000.00 payable annually, guaranteed for four (4) years, with the last guaranteed payment on 08/18/2031; and

        Starting 08/18/2032, the sum of $1,257.16 payable monthly for life, guaranteed for thirty (30) years. The last guaranteed payment will be made on 07/18/2062; thereafter, payments will continue for the lifetime of Greysi Saban.
        *End of payment schedule for Greysi Saban.*

   iii)  Payable to Nathaly Saban Vicente ("Payee"):

        Starting 08/28/2032, the sum of $25,000.00 payable annually, guaranteed for four (4) years, with the last guaranteed payment on 08/28/2035; and

        Starting 08/28/2036, the sum of $1,459.35 payable monthly for life, guaranteed for thirty (30) years. The last guaranteed payment will be made on 07/28/2066; thereafter, payments will continue for the lifetime of Nathaly Saban Vicente.
        *End of payment schedule for Nathaly Saban Vicente.*

The cost of the Periodic Payments is disclosed above as a condition of settlement. No part of the cost of the Periodic Payments may be paid directly to Plaintiff or any Payee, inasmuch as the parties negotiated for a structured settlement and the Periodic Payments and all other sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

2.  PLAINTIFF'S RIGHTS TO PAYMENTS

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by Plaintiff or any Payee; nor shall Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

3.  QUALIFIED ASSIGNMENT

Plaintiff acknowledges and agrees that Evanston has elected to make a "qualified assignment," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of Evanston's liability to make the Periodic Payments set forth above to MetLife Assignment Company, Inc. ("Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Evanston (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

Such assignment, when made, shall be accepted by Plaintiff without right of rejection, and shall completely release and discharge Evanston from the Periodic Payments obligation assigned to the Assignee. Plaintiff recognizes that upon such assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of Evanston shall thereupon become final, irrevocable and absolute.

If a qualified assignment as described above is made, Elizabeth V. Mejia, Greysi Saban and Nathaly Saban Vicente shall be secured parties of the Assignee, as described in the Qualified Assignment Release and Pledge Agreement executed among Plaintiff, Evanston and the Assignee to effect the assignment. The qualified funding asset or assets purchased by the Assignee to fund the obligation assumed under the qualified assignment shall serve as security interest for the promise of the Assignee to make such payments. Except for the obligation to provide such security interest, the obligation of the Assignee to make such payments shall be no greater than the obligation of Evanston to make such payments under this Settlement Agreement.

4.  RIGHT TO PURCHASE AN ANNUITY

Evanston, itself or through the Assignee reserve the right to fund the liability to make the Periodic Payments set forth above through the purchase of an annuity policy from Metropolitan Tower Life Insurance Company ("Annuity Issuer"). Evanston or the Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. Evanston or the Assignee shall have the

Annuity Issuer mail or electronically transfer payments directly to each of the Payee listed above. Plaintiff and/or each of the Payee listed above shall be responsible for maintaining a current mailing address and, if applicable, bank account information for each of the Payee listed above with the Assignee.

5.  **BENEFICIARY**

Any payments to be made after death of any Payee pursuant to the terms of this Settlement Agreement shall be made to the Estate of the Payee. After the age of majority, Payee may submit a change of beneficiary in writing to the Assignee. If no such Beneficiary has been designated, or if no such Contingent Beneficiary is living at the time of a Payee's death, then payments shall be made to the Estate of the deceased Payee. No designation of a Contingent Beneficiary and no revocation of any such designation, shall be effective unless it is in writing, in a form acceptable to the Assignee, as applicable, duly executed by the Payee and delivered to the Assignee, as applicable.

6.  **DISCHARGE OF OBLIGATION**

The obligation assumed by the Assignee to make each Periodic Payment shall be fully discharged upon mailing of a valid check or electronic equivalent funds transfer in the amount of such payment on or before the due date to the last address or account on record for each of the Payee listed above or their Beneficiary with the Annuity Issuer. If any of the Payee or Beneficiary notifies the Assignee that any check or electronic funds transfer was not received, then the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

Executed this 29th day of _____July_____, 20 20.


PLAINTIFF:   _Elizabeth V. Mejia_____
             Elizabeth V. Mejia, as Administrator of the
             Estate of Maximiliano Saban



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## ELIZABETH MEJIA

| | |
|---|---|
| Claimant's D.O.B: | 10/02/92 |
| Funding Date: | 08/05/20 |
| Today's Date: | 06/29/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal *<br>Life<br>Expected<br>Payout | Cost |
|---|---|---|---|---|
| **FINAL OPTION** | | | | |
| I. | **STRUCTURED SETTLEMENT BENEFITS** | | | $450,000 |
| | **A. Monthly Benefit**<br>$1,958.95   per month beginning Jan-1-2021 for 12<br>years certain only | $282,089 | $282,089 | |
| | **B. Deferred Lump Sums**<br>$250,000.00   at age 40 (Oct-2-2032) | $250,000 | $250,000 | |

Approx Tax Free Internal Rate of Return= 1.90%
Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 2.24% |
| 25% Tax Bracket | 2.53% |
| 28% Tax Bracket | 2.64% |
| 33% Tax Bracket | 2.84% |
| 35% Tax Bracket | 2.92% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| II. | **TOTALS** | $532,089 | $532,089 | $450,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



## NEWMAN SETTLEMENT SERVICES GROUP

### CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
### NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 06/29/20 |
| Life Insurance Co: | METLIFE (A+) |

| | FINAL OPTION | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|---|
| **I.** | **STRUCTURED SETTLEMENT BENEFITS** | | | | $425,000 |
| | **A. College Education Fund** | | | | |
| | $25,000.00 | per year beginning at age 18 (8/28/2032) for 4 years certain only | $100,000 | $100,000 | |
| | **B. Lifetime Monthly Benefit** | | | | |
| | $1,459.35 | per month beginning at age 22 (8/28/2036) for life with 30 years certain | $525,366 | $1,112,025 | |

Approx Tax Free Internal Rate of Return= 2.66%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.13% |
| 25% Tax Bracket | 3.55% |
| 28% Tax Bracket | 3.69% |
| 33% Tax Bracket | 3.97% |
| 35% Tax Bracket | 4.09% |

| | | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|---|
| **II.** | **TOTALS** | | $625,366 | $1,212,025 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



## NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 06/29/20 |
| Life Insurance Co: | METLIFE (A+) |

| FINAL OPTION | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|
| **I.   STRUCTURED SETTLEMENT BENEFITS** | | | $425,000 |
| | | | |
| **A. College Education Fund** | | | |
| $25,000.00   per year beginning at age 18 (8/18/2028) for 4 years certain only | $100,000 | $100,000 | |
| | | | |
| **B. Lifetime Monthly Benefit** | | | |
| $1,257.16   per month beginning at age 22 (8/18/2032) for life with 30 years certain | $452,578 | $957,956 | |

Approx Tax Free Internal Rate of Return= 2.61%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.07% |
| 25% Tax Bracket | 3.48% |
| 28% Tax Bracket | 3.63% |
| 33% Tax Bracket | 3.90% |
| 35% Tax Bracket | 4.02% |

| | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|
| **II.   TOTALS** | $552,578 | $1,057,956 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period,  a signed lock-in may be needed within 24 hours to guarantee the benefits.

# EXHIBIT B

# Qualified Assignment, Release and Pledge Agreement
## *In Accordance With Internal Revenue Code Section 130*

**"Claimant(s)-Secured Party"**: Elizabeth V. Melia, as Administrator of the Estate of Maximiliano Saban

**"Assignor"**: Evanston Insurance Company

**"Settlement Agreement"**: _____
[Date and title of Settlement Agreement, Order or other document embodying Assignor's obligation to make the agreed periodic payments]

**"Assignee"**: MetLife Assignment Company, Inc.

**"Annuity Issuer"**: Metropolitan Tower Life Insurance Company

**"Effective Date"**: _____

**This Qualified Assignment, Release and Pledge Agreement** is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A. Claimant(s)-Secured Party and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s)-Secured Party as specified or referred to in paragraph 15 of this Agreement (the "Periodic Payments");

B. Assignor and Assignee-Debtor wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code"); and

C. Assignee-Debtor desires to grant to Claimant(s)-Secured Party a security interest to secure the liability being assumed by Assignee-Debtor to make the Periodic Payments.

**Now, therefore,** in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute
   i.   damages (other than punitive damages), whether by suit or agreement, or
   ii.  compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee-Debtor's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments described in Paragraph 15. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee-Debtor will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee-Debtor shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 12 of this Agreement) be and

remain vested exclusively in Assignee-Debtor; provided, however, that the Annuity shall be used by Assignee-Debtor to fund the Periodic Payments and shall at all times be designated by Assignee-Debtor on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement.  Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5.  **Delivery of Payments.** Assignee-Debtor may have Annuity Issuer send payments directly to a Claimant(s)-Secured Party, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to a depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant(s)-Secured Party or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant(s)-Secured party or any Successor Payee any rights of ownership or control of the Annuity. Each Claimant(s)-Secured Party and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant(s)-Secured Party's or Successor Payee's current street address and telephone number and, if such Claimant(s) –Secured Party or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6.  **Discharge of Liability.** The Assignee-Debtor's liability to make each Periodic Payment to the Claimant(s)-Secured Party or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant(s)-Secured Party or Successor Payee by the Annuity Issuer.

7.  **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be
    i.   Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or
    ii.  Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.
    No Claimant(s)-Secured Party or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8.  **Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant(s)-Secured Party or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8.  Any party so designated is referred to in this Agreement as a " Beneficiary."  If no Beneficiary is living at the time of the death of a Claimant(s)-Secured Party or Successor Payee, payment shall be made to the decedent's estate.  As used in this agreement the term "Successor Payee" refers to a Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant(s)-Secured Party or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation

of a Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Beneficiary shall be deemed to be revocable; and no party that is designated as a Beneficiary (other than a party irrevocably designated as a Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. Assignee-Debtor hereby pledges and grants to Claimant(s)-Secured Party a lien on and security interest in all of Assignee-Debtor's right, title, and interest in the Annuity and all payments therefrom in order to secure the obligation of Assignee-Debtor to make the Periodic Payments. Assignee-Debtor and Claimant(s)-Secured Party shall notify Annuity Issuer of the lien created under this Agreement and Assignee-Debtor shall deliver the Annuity to Claimant-Secured Party upon execution of this agreement and receipt by Assignee-Debtor of the Annuity from Annuity Issuer.  Assignee-Debtor shall have no obligation to perform any other acts in connection with the pledge and grant of said security interest other than as expressly provided in this paragraph 9 of this Agreement.

10. Assignee-Debtor shall have all rights of Ownership and control in the Annuity; including the right to receive and retain all benefits under the Annuity, which are not inconsistent with the security interest granted under paragraph 9, and Claimant(s)-Secured Party shall have no right to anticipate, sell, assign, pledge, encumber, or otherwise exercise any right with respect to the Annuity, so long as Assignee-Debtor has not failed due to insolvency or bankruptcy to make any of the Periodic Payments. If such a failure occurs and is continuing, Claimant(s)-Secured Party shall have all of the rights and remedies of a secured party under the law then in effect in the State of Delaware.

11. The Annuity will bear the following legend:

> "NOTICE"
> "This annuity contract has been delivered to the possession of <u>Elizabeth V. Melia, Greysi Saban and Nathaly Saban Vicente ("Claimant-Secured Party")</u>  for the sole purpose of perfecting a lien and security interest of such person in this contract. <u>Claimant-Secured Party</u> is not the owner of, and has no ownership rights in, this contract and may not anticipate, sell, assign, pledge, encumber, or otherwise use this contract as any form of collateral.  Please contact the issuer of this contract for further information."

12. **Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee-Debtor of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant -Secured Party(s) of Assignor's liability shall be of no force or effect; (ii) Assignee -Debtor shall be conclusively deemed to be acting as the agent of Assignor; (iii)  the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee-Debtor shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

13. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**
    (i) This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.
    (ii) This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

Page 3

14. **Advice, Comprehension of Agreement.** In entering into this Agreement, each Claimant-Secured Party represents and warrants that (i) such Claimant has relied solely upon the legal and tax advice of such Claimant(s)-Secured Party's own attorneys and other advisors, who are the attorneys and advisors of such Claimants' choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant.

15. **Description of Periodic Payments.** The Periodic Payments are as set forth immediately below or (if not set forth below) as set forth in attached Addendum No. 1, which is hereby incorporated in and made a part of this Agreement.

**Description of Periodic Payments:**

This Qualified Assignment and Release Agreement is signed in one or more counterparts as of the Effective Date by the following:

Assignor: Evanston Insurance Company          Assignee: MetLife Assignment Company, Inc.

By: _____           By: _____
        Authorized Representative                         Authorized Representative

Title: _____        Title: _____

Claimant(s)-Secured Party: Elizabeth V. Mejia,     Approved as to Form and Content:
Greysi Saban, and Nathaly Saban Vicente

By: _____           _____
        Elizabeth V. Mejia, as Administrator of        Attorney for Claimant-Secured Party
        the Estate of Maximiliano Saban                 MICHAEL ZWAL

Page 4

# Addendum No. 1
## Description of Periodic Payments

**Claimant (1):**        **Elizabeth V. Mejia**
**Claimant Address:**    70 Oak Street, 1st Floor
                         New Britain, Connecticut 06051
Claimant Social Security Number:   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        Date of Birth:   10/02/1992

**Payee Name:**          **Elizabeth V. Mejia**
**Payee Address:**       70 Oak Street, 1st Floor
                         New Britain, Connecticut 06051

**Benefit(s):**          1.  **Period Certain Annuity** – $1,958.95 payable monthly, guaranteed for 12
                             year(s),  beginning on 01/01/2021, with the last guaranteed payment on
                             12/01/2032.
                         2.  **Guaranteed Lump Sum** – $250,000.00 paid as a lump sum on 10/02/2032
                             guaranteed.

**Claimant (2):**        **Greysi Saban**
**Claimant Address:**    70 Oak Street, 1st Floor
                         New Britain, Connecticut 06051
Claimant Social Security Number:   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        Date of Birth:   08/18/2010

**Payee Name:**          **Greysi Saban**
**Payee Address:**       70 Oak Street, 1st Floor
                         New Britain, Connecticut 06051

**Benefit(s):**          1.  **Period Certain Annuity** – $25,000.00 payable annually, guaranteed for 4
                             year(s),  beginning on 08/18/2028, with the last guaranteed payment on
                             08/18/2031.
                         2.  **Life with Certain Period Annuity** – $1,257.16 for life, payable monthly,
                             guaranteed for 30 year(s),  beginning on 08/18/2032, with the last guaranteed
                             payment on 07/18/2062.

**Claimant (3):**        **Nathaly Saban Vicente**
**Claimant Address:**    70 Oak Street, 1st Floor
                         New Britain, Connecticut 06051
Claimant Social Security Number:   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        Date of Birth:   08/28/2014

**Initials**

Assignor:                _____

Assignee-Debtor:         _____

Claimant(s)
Secured Party:           _ƐⱮM_____

Attorney for
Claimant-
Secured Party:           _MCヒ_____

## ADDENDUM No. 1 (continued)

Payee Name:
Payee Address:

Nathaly Saban Vicente
70 Oak Street, 1st Floor
New Britain, Connecticut 06051

Benefit(s):

1. Period Certain Annuity – $25,000.00 payable annually, guaranteed for 4 year(s), beginning on 08/28/2032, with the last guaranteed payment on 08/28/2035.
2. Life with Certain Period Annuity – $1,459.35 for life, payable monthly, guaranteed for 30 year(s), beginning on 08/28/2036, with the last guaranteed payment on 07/28/2066.

**Initials**

Assignor: _____

Assignee-Debtor: _____

Claimant(s)
Secured Party: _____

Attorney for
Claimant-
Secured Party: _____

Page 6

# EXHIBIT C

# **MetLife**®

Metropolitan Life Insurance Company
New York, NY

**Metropolitan Life Insurance Company (herein called MetLife) certifies that it will make the payments described in this certificate.**

| | |
|---|---|
| **Group Annuity Contract No.** | |
| | 8298 |
| **Certificate No.** | |
| | XXXX |
| **Measuring Life** | |
| | Jane Doe |
| **Date of Birth of Measuring Life** | |
| | October 25, 1964 |
| **Owner** | |
| | METLIFE TOWER RESOURCES GROUP, INC. |
| **Annuity Commencement Date** | |
| | July 15, 2005 |
| **Beneficiary (if any)** | |
| | Primary: Kim , John Doe & Jack Doe Equally Or To The Survivor<br>Contingent: Mary Doe, Sister, Sam Doe, Brother, & Jackie Doe, Sister |

## NOTICE

This annuity contract has been delivered to the possession of Jane Doe for the sole purpose of perfecting a lien and security interest of such person in this contract. Jane Doe is not the owner of, and has no ownership rights in, this contract and may not anticipate, sell, assign, pledge, encumber, or otherwise use this contract as any form of collateral.  Please contact the issuer of this contract for further information.

Form G.4324A

**Rights of Owner:**  The Owner owns the annuity described in this certificate.  The Owner will have the right at any time to designate the payee, including the Beneficiary, to whom benefits are payable under the annuity.  However, unless the Owner otherwise directs, MetLife will make all payments under the annuity to the person(s) named in the certificate.

In addition, at any time after the death of the Measuring Life, the Owner may direct MetLife to pay, in lieu of any term certain annuity payments described in this certificate, the commuted value of all remaining term certain annuity payments in a  single sum to a payee named by the Owner.  The commuted value of such annuity payments will be calculated using the same interest rate(s) as that used in determining the purchase price of the annuity.

No such change in payee or terms of payment will be effective until written notice of the change is received by MetLife.  However, any change in a Beneficiary designation will take effect as of the date the request was signed but without prejudice to MetLife on account of any payment made by it before receipt of the request.  When contacting MetLife the Owner should mention the Contract number and the name and certificate number of the Measuring Life.

**Proof of Living:**  MetLife may require proof that the Measuring Life, the Beneficiary or other payee, as the case may be, is living on the date on which any annuity payment is to be made.  If proof is requested, no payment will be made until the proof has been received by MetLife.

**Beneficiary:**  If two or more Beneficiaries are designated and their respective interests are not specified, their interests will be several and equal.

**Change or Waiver:**  No sales representative or other person, except an authorized officer of MetLife, may make or change any certificate or make any binding promises about any certificate on behalf of MetLife.  Any amendment, modification or waiver of any provision of this certificate will be in writing and may be made effective on behalf of MetLife only by an authorized officer of MetLife.

**Misstatements:**  If the age or sex of the Measuring Life or any other relevant fact has been misstated, MetLife will not pay a greater amount of annuity than that provided by the actual amount received to purchase the annuity and the correct information.  Any overpayment of annuity will, together with interest, be deducted from future annuity payments.   Any underpayment of an annuity will, together with interest, be paid immediately upon receipt of the corrected information.  The interest rate(s) will be that used in determining the purchase price of the annuity.

**Nonassignability; Claims of Creditors:**  This certificate and the payments provided under it are nonassignable and will be exempt from the claims of creditors to the maximum extent permitted by law.

Form G.4324A                              (2)

**Payment of Annuity:** MetLife will make payments under this certificate as follows:

On and after July 15, 2005 and while the Measuring Life is living, but in any case up to and including June 15, 2025, MetLife will pay monthly annuity payments to the payee named by the Owner.  If the Measuring Life dies before June 15, 2025, and unless the Owner directs otherwise, MetLife will pay to the Beneficiary, up to and including June 15, 2025, the monthly annuity payments that are payable after the death of the Measuring Life.  The rate of the monthly annuity payments is shown in item (1) below.

(1)     Monthly Rate of Annuity:  $2,013.00.

On and after October 25, 2019 and while the Measuring Life is living, but in any case up to and including September 25, 2039, MetLife will pay monthly annuity payments to the payee named by the Owner.  If the Measuring Life dies before September 25, 2039, and unless the Owner directs otherwise, MetLife will pay to the Beneficiary, up to and including September 25, 2039, the monthly annuity payments that are payable after the death of the Measuring Life.  The rate of the monthly annuity payments is shown in item (2) below.

(2)     Monthly Rate of Annuity:  $914.00.

# MetLife®

Metropolitan Life Insurance Company
200 Park Avenue, New York, NY 10166

## ENDORSEMENT

Notwithstanding any provisions to the contrary, this certificate is hereby endorsed as of its issue date as follows:

This certificate is not assignable. It cannot be transferred, assigned or pledged as collateral for a loan. Payments under this certificate cannot be changed or accelerated and paid before the payment due date.

No annuity payments payable under this certificate are payable in a single-sum, except as provided below:

If MetLife is presented with a court order which is a "qualified order" within the meaning of Section 5891 of the Internal Revenue Code of 1986, as subsequently amended, (the "Code") which orders the commutation of all or a portion of the remaining guaranteed payments to be paid under a structured settlement for which this certificate has been issued as a funding asset, MetLife will pay to a payee named by the owner a commuted payment.

MetLife will calculate the amount of the commuted payment using 95 percent of its annuity purchase rates in effect on the date of the court order, for the same or similar certificates. Only the remaining guaranteed payments will be commuted.

If such annuity rates are not available, the commuted payment will equal the present value of such guaranteed payments, and calculated using the following interest rate: the annual effective yield based on the current 30-year LIBOR swap rate plus 120 basis points (Source: Federal Reserve Statistical Release H.15) at the close of business on the date of the court order. If this date is not a business day, we will use the interest rates reported on the next following business day.

Any remaining portions of such guaranteed payments that are not commuted will be made on their specified due dates.

All requests for a commutation payment will be subject to MetLife's approval which will not be unreasonably withheld.

Metropolitan Life Insurance Company

Gwenn L. Carr
Senior Vice President and Secretary

Form G.20247-571B

# EXHIBIT D



Metropolitan Tower Life Insurance Company
Lincoln, NE

**Evidence of Guarantee**

Pursuant to authority granted by its Board of Directors, Metropolitan Tower Life Insurance Company ("Met Tower Life") has agreed to guarantee any payment or other obligation required to be made or performed by MetLife Assignment Company, Inc., a wholly owned subsidiary of MetLife, on or after May 15, 2017 in connection with the purchase of annuities from Met Tower Life.

_____

**Tim Brown**
**Senior Vice President**
**Metropolitan Tower Life Insurance Company**

# EXHIBIT E



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## ELIZABETH MEJIA

| | |
|---|---|
| Claimant's D.O.B: | 10/02/92 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 1 | Certain Payout | Normal Life Expected Payout * | Cost |
|---|---|---|---|

**I.   STRUCTURED SETTLEMENT BENEFITS**

| | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|
| A.  Lifetime Monthly Benefit<br>$1,211.43   per month beginning Jan-1-2021 for life with 40 years certain | $581,486 | $835,887 | $450,000 |

Approx Tax Free Internal Rate of Return= 2.42%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 2.85% |
| 25% Tax Bracket | 3.23% |
| 28% Tax Bracket | 3.36% |
| 33% Tax Bracket | 3.61% |
| 35% Tax Bracket | 3.72% |

| II.   TOTALS | $581,486 | $835,887 | $450,000 |
|---|---|---|---|

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV. This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.  Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## ELIZABETH MEJIA

| | | | | |
|---|---|---|---|---|
| Claimant's D.O.B: | 10/02/92 | | | |
| Funding Date: | 08/05/20 | | | |
| Today's Date: | 07/27/20 | | | |
| Life Insurance Co: | METLIFE (A+) | | | |

| | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **Option 2** | | | | |
| **I. STRUCTURED SETTLEMENT BENEFITS** | | | | |
| **A. Deferred Lump Sums** | | | | |
| $25,000.00 | at age 30 (Oct-2-2022) | $748,505 | $748,505 | $450,000 |
| $50,000.00 | at age 35 (Oct-2-2027) | | | |
| $100,000.00 | at age 40 (Oct-1-2032) | | | |
| $125,000.00 | at age 45 (Oct-2-2037) | | | |
| $150,000.00 | at age 50 (Oct-2-2042) | | | |
| $298,504.72 | at age 55 (Oct-2-2047) | | | |

Approx Tax Free Internal Rate of Return= 2.64%
Taxable Equivalent Yield

| 16% Tax Bracket | 3.11% |
|---|---|
| 25% Tax Bracket | 3.52% |
| 28% Tax Bracket | 3.67% |
| 33% Tax Bracket | 3.94% |
| 35% Tax Bracket | 4.06% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| **II. TOTALS** | | $748,505 | $748,505 | $450,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period,  a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR ELIZABETH MEJIA

| | |
|---|---|
| Claimant's D.O.B: | 10/02/92 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 3 | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **I.** | **STRUCTURED SETTLEMENT BENEFITS** | | | $450,000 |
| | **A. Monthly Benefit** | | | |
| | $1,955.69  per month beginning Jan-1-2021 for 12 years certain only | $281,619 | $281,619 | |
| | **B. Deferred Lump Sums** | | | |
| | $250,000.00  at age 40 (Oct-2-2032) | $250,000 | $250,000 | |

Approx Tax Free Internal Rate of Return= 1.90%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 2.24% |
| 25% Tax Bracket | 2.53% |
| 28% Tax Bracket | 2.64% |
| 33% Tax Bracket | 2.84% |
| 35% Tax Bracket | 2.92% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| **II.** | **TOTALS** | $531,619 | $531,619 | $450,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved. Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR ELIZABETH MEJIA

| | |
|---|---|
| Claimant's D.O.B: | 10/02/92 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 4 | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **I. STRUCTURED SETTLEMENT BENEFITS** | | | | |
| | | | | |
| A. **Monthly Benefit** | | | | |
| $1,759.45 | per month beginning Jan-1-2021 for 30 years certain only | $633,402 | $633,402 | $450,000 |
| | | | | |
| | Approx Tax Free Internal Rate of Return= 2.40% | | | |
| | Taxable Equivalent Yield | | | |
| | 15% Tax Bracket    2.82% | | | |
| | 25% Tax Bracket    3.20% | | | |
| | 28% Tax Bracket    3.33% | | | |
| | 33% Tax Bracket    3.58% | | | |
| | 35% Tax Bracket    3.69% | | | |
| **II. TOTALS** | | $633,402 | $633,402 | $450,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved. Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract. Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days. Benefits may vary after that time. In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR ELIZABETH MEJIA

| Claimant's D.O.B: | 10/02/92 |
|---|---|
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 5 | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|
| **I.   STRUCTURED SETTLEMENT BENEFITS** | | | |
| **A. Monthly Benefit** | | | |
| $1,635.77    per month beginning Jan-1-2021 for 34 years certain only | $667,394 | $667,394 | $450,000 |

Approx Tax Free Internal Rate of Return= 2.47%

Taxable Equivalent Yield

| 15% Tax Bracket | 2.91% |
|---|---|
| 25% Tax Bracket | 3.29% |
| 28% Tax Bracket | 3.43% |
| 33% Tax Bracket | 3.69% |
| 35% Tax Bracket | 3.80% |

| II.   TOTALS | $667,394 | $667,394 | $450,000 |
|---|---|---|---|

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV. This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## ELIZABETH MEJIA

| | |
|---|---|
| Claimant's D.O.B: | 10/02/92 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **Option 6** | | | | |
| I. | STRUCTURED SETTLEMENT BENEFITS | | | $450,000 |
| | **A. Monthly Benefit** | | | |
| | $1,496.24  per month beginning Jan-1-2021 for 22 years certain only | $395,007 | $395,007 | |
| | **B. Deferred Lump Sums** | | | |
| | $250,000.00  at age 50 (Oct-2-2042) | $250,000 | $250,000 | |

Approx Tax Free Internal Rate of Return= 1.90%
Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 2.24% |
| 25% Tax Bracket | 2.53% |
| 28% Tax Bracket | 2.64% |
| 33% Tax Bracket | 2.84% |
| 35% Tax Bracket | 2.92% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| II. | **TOTALS** | $645,007 | $645,007 | $450,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal Life Expected Payout * | Cost |
|---|---|---|---|---|
| | Option 1 | | | |
| I. | STRUCTURED SETTLEMENT BENEFITS | | | $410,000 |
| | **A. College Education Fund** | | | |
| | $50,000.00  per year beginning at age 18 (8/28/2032) for 4 years certain only | $200,000 | $200,000 | |
| | **B. Deferred Lump Sums** | | | |
| | $100,000.00  at age 25 (Aug-28-2039) | $532,860 | $532,860 | |
| | $150,000.00  at age 30 (Aug-27-2044) | | | |
| | $282,860.21  at age 35 (Aug-27-2049) | | | |

Approx Tax Free Internal Rate of Return= 2.70%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.18% |
| 25% Tax Bracket | 3.60% |
| 28% Tax Bracket | 3.75% |
| 33% Tax Bracket | 4.03% |
| 35% Tax Bracket | 4.15% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| II. | TOTALS | $732,860 | $732,860 | $410,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 2 | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|

**I. STRUCTURED SETTLEMENT BENEFITS**

**A. Lifetime Monthly Benefit**

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| $1,471.71 | per month beginning at age 18 (8/28/2032) for life with 40 years certain | $706,421 | $1,192,085 | $410,000 |

Approx Tax Free Internal Rate of Return= 2.64%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.11% |
| 25% Tax Bracket | 3.52% |
| 28% Tax Bracket | 3.67% |
| 33% Tax Bracket | 3.94% |
| 35% Tax Bracket | 4.06% |

**II. TOTALS**

| | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|
| | $706,421 | $1,192,085 | $410,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.  The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III.  Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| **Option 3** | Certain Payout | Normal Life Expected Payout * | Cost |
|---|---|---|---|
| **I.   STRUCTURED SETTLEMENT BENEFITS** | | | $410,000 |
| | | | |
| **A. College Education Fund** | | | |
| $25,000.00   per year beginning at age 18 (8/28/2032) for 4 years certain only | $100,000 | $100,000 | |
| | | | |
| **B. Lifetime Monthly Benefit** | | | |
| $1,383.57   per month beginning at age 22 (8/28/2036) for life with 40 years certain | $664,114 | $1,054,280 | |

Approx Tax Free Internal Rate of Return= 2.64%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.11% |
| 25% Tax Bracket | 3.52% |
| 28% Tax Bracket | 3.67% |
| 33% Tax Bracket | 3.94% |
| 35% Tax Bracket | 4.06% |

| **II.   TOTALS** | $764,114 | $1,154,280 | $410,000 |
|---|---|---|---|

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.   The annuity premium is received on or before the above funding date.
III.   Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.   This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal *<br>Life<br>Expected<br>Payout | Cost |
|---|---|---|---|---|
| **Option 4** | | | | |
| **I.** **STRUCTURED SETTLEMENT BENEFITS** | | | | $410,000 |
| **A. Monthly Benefit** | | | | |
| $2,794.99 | per month beginning at age 18 (8/28/2032) for 12 years certain only | $402,479 | $402,479 | |
| **B. Deferred Lump Sums** | | | | |
| $300,000.00 | at age 30 (Aug-28-2044) | $300,000 | $300,000 | |
| | Approx Tax Free Internal Rate of Return= 2.69% | | | |
| | Taxable Equivalent Yield | | | |
| | 15% Tax Bracket    3.16% | | | |
| | 25% Tax Bracket    3.59% | | | |
| | 28% Tax Bracket    3.74% | | | |
| | 33% Tax Bracket    4.01% | | | |
| | 35% Tax Bracket    4.14% | | | |
| **II.** **TOTALS** | | $702,479 | $702,479 | $410,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved. Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract. Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days. Benefits may vary after that time. In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 5 | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|
| **I.  STRUCTURED SETTLEMENT BENEFITS** | | | |
| | | | |
| **A.  Lifetime Monthly Benefit** | | | |
| $1,536.62   per month beginning at age 18 (8/28/2032) for life with 30 years certain | $553,183 | $1,244,662 | $425,000 |

Approx Tax Free Internal Rate of Return= 2.67%
Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.14% |
| 25% Tax Bracket | 3.56% |
| 28% Tax Bracket | 3.71% |
| 33% Tax Bracket | 3.99% |
| 35% Tax Bracket | 4.11% |

| | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|
| **II.  TOTALS** | $553,183 | $1,244,662 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.

  


# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR NATHALY SABAN

| Claimant's D.O.B: | 08/28/14 |
|---|---|
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | Option 6 | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|---|
| I. | **STRUCTURED SETTLEMENT BENEFITS** | | | | $425,000 |
| | | | | | |
| | A. College Education Fund | | | | |
| | $25,000.00 | per year beginning at age 18 (8/28/2032) for 4 years certain only | $100,000 | $100,000 | |
| | | | | | |
| | B. Lifetime Monthly Benefit | | | | |
| | $1,457.60 | per month beginning at age 22 (8/28/2036) for life with 30 years certain | $524,736 | $1,110,691 | |

Approx Tax Free Internal Rate of Return= 2.66%

Taxable Equivalent Yield

| 15% Tax Bracket | 3.13% |
|---|---|
| 25% Tax Bracket | 3.55% |
| 28% Tax Bracket | 3.69% |
| 33% Tax Bracket | 3.97% |
| 35% Tax Bracket | 4.09% |

| | | | | | |
|---|---|---|---|---|---|
| II. | **TOTALS** | | $624,736 | $1,210,691 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved. Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.  The date of birth shown above is correct (if lifetime payments are involved).
II. The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV. This is an illustration...not a contract. Should it contain any clerical errors, we reserve the right to correct them.
V.  Quote is only valid for 7 days. Benefits may vary after that time. In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR NATHALY SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/28/14 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 7 | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|
| **I. STRUCTURED SETTLEMENT BENEFITS** | | | $425,000 |
| | | | |
| **A. College Education Fund** | | | |
| $25,000.00  per year beginning at age 18 (8/28/2032) for 4 years certain only | $100,000 | $100,000 | |
| | | | |
| **B. Deferred Lump Sums** | | | |
| $50,000.00   at age 21 (Aug-28-2035) | $695,560 | $695,560 | |
| $100,000.00   at age 25 (Aug-28-2039) | | | |
| $200,000.00   at age 30 (Aug-27-2044) | | | |
| $345,560.19   at age 35 (Aug-28-2049) | | | |

Approx Tax Free Internal Rate of Return= 2.74%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.22% |
| 25% Tax Bracket | 3.65% |
| 28% Tax Bracket | 3.81% |
| 33% Tax Bracket | 4.09% |
| 35% Tax Bracket | 4.22% |

| | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|
| **II. TOTALS** | $795,560 | $795,560 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## NATHALY SABAN

| | | | | |
|---|---|---|---|---|
| Claimant's D.O.B: | 08/28/14 | | | |
| Funding Date: | 08/05/20 | | | |
| Today's Date: | 07/27/20 | | | |
| Life Insurance Co: | METLIFE (A+) | | | |

| Option 8 | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **I. STRUCTURED SETTLEMENT BENEFITS** | | | | $425,000 |
| | | | | |
| **A. College Education Fund** | | | | |
| $50,000.00 | per year beginning at age 18 (8/28/2032) for 4 years certain only | $200,000 | $200,000 | |
| | | | | |
| **B. Deferred Lump Sums** | | | | |
| $50,000.00 | at age 21 (Aug-28-2035) | $547,437 | $547,437 | |
| $75,000.00 | at age 25 (Aug-28-2039) | | | |
| $150,000.00 | at age 30 (Aug-27-2044) | | | |
| $272,437.10 | at age 35 (Aug-28-2049) | | | |

| | | |
|---|---|---|
| Approx Tax Free Internal Rate of Return= | 2.68% | |
| **Taxable Equivalent Yield** | | |
| 15% Tax Bracket | 3.16% | |
| 25% Tax Bracket | 3.57% | |
| 28% Tax Bracket | 3.72% | |
| 33% Tax Bracket | 4.00% | |
| 35% Tax Bracket | 4.12% | |

| | | | | |
|---|---|---|---|---|
| **II. TOTALS** | | $747,437 | $747,437 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **Option 1** | | | | |
| I. | **STRUCTURED SETTLEMENT BENEFITS** | | | $410,000 |
| | **A. College Education Fund**<br>$50,000.00  per year beginning at age 18 (8/18/2028)<br>for 4 years certain only | $200,000 | $200,000 | |
| | **B. Deferred Lump Sums**<br>$75,000.00  at age 25 (Aug-18-2035)<br>$150,000.00  at age 30 (Aug-17-2040)<br>$206,377.59  at age 35 (Aug-17-2045) | $431,378 | $431,378 | |

Approx Tax Free Internal Rate of Return= 2.55%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.00% |
| 25% Tax Bracket | 3.40% |
| 28% Tax Bracket | 3.54% |
| 33% Tax Bracket | 3.81% |
| 35% Tax Bracket | 3.92% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| II. | **TOTALS** | $631,378 | $631,378 | $410,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV. This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.  Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period,  a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| Claimant's D.O.B: | 08/18/10 |
|---|---|
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 2 | | Certain Payout | Normal *<br>Life<br>Expected<br>Payout | Cost |
|---|---|---|---|---|

**I.    STRUCTURED SETTLEMENT BENEFITS**

**A.  Lifetime Monthly Benefit**

| $1,307.32 | per month beginning at age 18 (8/18/2028)<br>for life with 40 years certain | $627,514 | $1,058,929 | $410,000 |
|---|---|---|---|---|

Approx Tax Free Internal Rate of Return= 2.60%

Taxable Equivalent Yield

| 15% Tax Bracket | 3.06% |
|---|---|
| 25% Tax Bracket | 3.47% |
| 28% Tax Bracket | 3.61% |
| 33% Tax Bracket | 3.88% |
| 35% Tax Bracket | 4.00% |

**II.   TOTALS** — $627,514   $1,058,929   $410,000

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV. This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.  Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period,  a signed lock-in may be needed within 24 hours to guarantee the benefits.



# CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal Life Expected Payout * | Cost |
|---|---|---|---|---|
| **Option 3** | | | | |
| **I.** | **STRUCTURED SETTLEMENT BENEFITS** | | | $410,000 |
| **A.** | **College Education Fund** | | | |
| | $25,000.00 per year beginning at age 18 (8/18/2028) for 4 years certain only | $100,000 | $100,000 | |
| **B.** | **Lifetime Monthly Benefit** | | | |
| | $1,190.50 per month beginning at age 22 (8/18/2032) for life with 40 years certain | $571,440 | $907,161 | |

Approx Tax Free Internal Rate of Return= 2.58%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.04% |
| 25% Tax Bracket | 3.44% |
| 28% Tax Bracket | 3.58% |
| 33% Tax Bracket | 3.85% |
| 35% Tax Bracket | 3.97% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| **II.** | **TOTALS** | $671,440 | $1,007,161 | $410,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved. Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | Option 4 | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| I. | **STRUCTURED SETTLEMENT BENEFITS** | | | $410,000 |
| | **A. Monthly Benefit** | | | |
| | $2,522.81   per month beginning at age 18 (8/18/2028) for 12 years certain only | $363,285 | $363,285 | |
| | **B. Deferred Lump Sums** | | | |
| | $250,000.00   at age 30 (Aug-18-2040) | $250,000 | $250,000 | |
| | Approx Tax Free Internal Rate of Return= 2.52% | | | |
| | Taxable Equivalent Yield | | | |
| | 15% Tax Bracket       2.96% | | | |
| | 25% Tax Bracket       3.36% | | | |
| | 28% Tax Bracket       3.50% | | | |
| | 33% Tax Bracket       3.76% | | | |
| | 35% Tax Bracket       3.88% | | | |
| II. | **TOTALS** | $613,285 | $613,285 | $410,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR
## GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 5 | Certain Payout | Normal  * Life Expected Payout | Cost |
|---|---|---|---|

**I.   STRUCTURED SETTLEMENT BENEFITS**

|   A.   Lifetime Monthly Benefit | | | |
|---|---|---|---|
| $1,364.62     per month beginning at age 18 (8/18/2028) for life with 30 years certain | $491,263 | $1,105,342 | $425,000 |

Approx Tax Free Internal Rate of Return= 2.62%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.08% |
| 25% Tax Bracket | 3.49% |
| 28% Tax Bracket | 3.64% |
| 33% Tax Bracket | 3.91% |
| 35% Tax Bracket | 4.03% |

| II.   TOTALS | $491,263 | $1,105,342 | $425,000 |
|---|---|---|---|

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV. This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.  Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **Option 6** | | | | |
| **I.** **STRUCTURED SETTLEMENT BENEFITS** | | | | $425,000 |
| **A. College Education Fund** | | | | |
| $25,000.00 | per year beginning at age 18 (8/18/2028) for 4 years certain only | $100,000 | $100,000 | |
| **B. Lifetime Monthly Benefit** | | | | |
| $1,255.61 | per month beginning at age 22 (8/18/2032) for life with 30 years certain | $452,020 | $956,775 | |

Approx Tax Free Internal Rate of Return= 2.61%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 3.07% |
| 25% Tax Bracket | 3.48% |
| 28% Tax Bracket | 3.63% |
| 33% Tax Bracket | 3.90% |
| 35% Tax Bracket | 4.02% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| **II.** **TOTALS** | | $552,020 | $1,056,775 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved. Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract. Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days. Benefits may vary after that time. In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| | |
|---|---|
| Claimant's D.O.B: | 08/18/10 |
| Funding Date: | 08/05/20 |
| Today's Date: | 07/27/20 |
| Life Insurance Co: | METLIFE (A+) |

| Option 7 | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **I.** **STRUCTURED SETTLEMENT BENEFITS** | | | | $425,000 |
| | | | | |
| **A. College Education Fund** | | | | |
| $25,000.00 | per year beginning at age 18 (8/18/2028) for 4 years certain only | $100,000 | $100,000 | |
| | | | | |
| **B. Deferred Lump Sums** | | | | |
| $50,000.00 | at age 21 (Aug-18-2031) | $598,786 | $598,786 | |
| $75,000.00 | at age 25 (Aug-18-2035) | | | |
| $150,000.00 | at age 30 (Aug-17-2040) | | | |
| $323,785.98 | at age 35 (Aug-18-2045) | | | |

Approx Tax Free Internal Rate of Return= 2.63%

**Taxable Equivalent Yield**

| | |
|---|---|
| 15% Tax Bracket | 3.09% |
| 25% Tax Bracket | 3.51% |
| 28% Tax Bracket | 3.65% |
| 33% Tax Bracket | 3.93% |
| 35% Tax Bracket | 4.05% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| **II.** **TOTALS** | | $698,786 | $698,786 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.



# NEWMAN SETTLEMENT SERVICES GROUP

## CONFIDENTIAL STRUCTURED SETTLEMENT PROPOSAL FOR GREYSI SABAN

| | | |
|---|---|---|
| Claimant's D.O.B: | 08/18/10 | |
| Funding Date: | 08/05/20 | |
| Today's Date: | 07/27/20 | |
| Life Insurance Co: | METLIFE (A+) | |

| Option 8 | | Certain Payout | Normal * Life Expected Payout | Cost |
|---|---|---|---|---|
| **I.  STRUCTURED SETTLEMENT BENEFITS** | | | | $425,000 |
| | | | | |
| **A.  College Education Fund** | | | | |
| $50,000.00 | per year beginning at age 18 (8/18/2028) for 4 years certain only | $200,000 | $200,000 | |
| | | | | |
| **B.  Deferred Lump Sums** | | | | |
| $50,000.00 | at age 21 (Aug-18-2031) | $439,981 | $439,981 | |
| $75,000.00 | at age 25 (Aug-18-2035) | | | |
| $100,000.00 | at age 30 (Aug-17-2040) | | | |
| $214,980.87 | at age 35 (Aug-18-2045) | | | |

Approx Tax Free Internal Rate of Return= 2.51%

Taxable Equivalent Yield

| | |
|---|---|
| 15% Tax Bracket | 2.95% |
| 26% Tax Bracket | 3.35% |
| 28% Tax Bracket | 3.49% |
| 33% Tax Bracket | 3.75% |
| 35% Tax Bracket | 3.86% |

| | | Certain Payout | Normal Life Expected Payout | Cost |
|---|---|---|---|---|
| **II.  TOTALS** | | $639,981 | $639,981 | $425,000 |

*Normal Expected Payout only differs from Certain Payout when lifetime payments are involved.  Normal Expected Payout reflects the amount of money that would be paid to the claimant if he or she were receiving a lifetime payment and lived his or her normal life expectancy as predicted by the Annuity Mortality Table 1983(a).

Assumptions:
I.   The date of birth shown above is correct (if lifetime payments are involved).
II.  The annuity premium is received on or before the above funding date.
III. Any structured settlement contract would be for physical injury payments as defined in IRC Sec. 104(a)(2) and assigned under Sec. 130.
IV.  This is an illustration...not a contract.  Should it contain any clerical errors, we reserve the right to correct them.
V.   Quote is only valid for 7 days.  Benefits may vary after that time.  In event of a rate change during the 7 day period, a signed lock-in may be needed within 24 hours to guarantee the benefits.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH V. MEJIA as Administrator of the Estate of
MAXIMILIANO SABAN, and ELIZABETH V. MEJIA,
Individually,

                          Plaintiff,                    DOCKET NO.
                                                        7:18-CV-6483

        -against-

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

                          Defendants.

---

O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC,

                          Third-Party Plaintiff,

        -against-

SESI CONSULTING ENGINEERS, P.C., KENNETH J.
QUAZZA, P.E., NEW GENERATIONS MASONRY, MG
COMMERCIAL CONCRETE, BONDED CONCRETE, INC.,

                          Third-Party Defendant.

---

### <u>AFFIRMATION OF MICHAEL C. ZWAL</u>

     MICHAEL C. ZWAL, an attorney duly admitted to practice law in the State of New

York and before this Court, affirms the truth of the following under penalties of perjury:

     1.    I am a member of the firm of BAMUNDO ZWAL & SCHERMERHORN,

LLP, attorneys for the Plaintiff herein.   I am familiar with the facts and circumstances involved

herein by virtue of a review of the case files maintained by my office.

     2.    I make this affirmation in support of the application by Plaintiff, ELIZABETH V.

MEJIA as Administrator of the Estate of MAXIMILIANO SABAN, in accordance with Local

Civil Rule 83.2(b)(2), for a Court order approving the settlement of this action, the apportionment of the proceeds, and the payment of liens and attorney's fees.

***Court Approval of the Settlement***

      3.     This action arises from the death of Plaintiff's Decedent, Maximiliano Saban, on August 3, 2017 at a construction project on property located at One Dutchess Avenue, Poughkeepsie, New York, owned by Defendant O'NEILL GROUP-DUTTON, LLC. The project involved the conversion of a former lumber yard into a multiple building, mixed commercial and residential property.   On that day, the decedent was working as a laborer for a concrete company, Third-Party Defendants MG COMMERCIAL CONCRETE, which was engaged in construction of the concrete foundation of one of the residential buildings, designated as Building C. Adjoining the eastern portion of Building C was a concrete bin block wall running in a north-south direction along Building D. The wall, which was erected by the general contractor, Defendant ONEKEY, LLC, was built using 3600 lb. bin blocks as a retaining wall to hold back a soil surcharge, i.e., an enormous pile of soil, that was being used to compress the soil and remove the water, in the area where the foundation for Building D would eventually be poured. The accident occurred when the improperly constructed retaining wall collapsed and buried Mr. Saban beneath the bin blocks and soil. The principal of MG Commercial Concrete testified that he saw Mr. Saban running and yelling for 2-4 seconds prior to being buried, as the wall collapsed in a wave.

      4.     At the time of his death, Mr. Saban was a 28-year old man who was an

undocumented immigrant. He was survived by his wife, Plaintiff ELIZABETH V. MEJIA (age

24 at the time of the occurrence) and two children, Greysi and Nathaly (ages 6 and 3

respectively, at the time of the occurrence), all of whom were born in the United States. Ms.

Mejia testified that at the time of his death, she and Mr. Saban had been having marital

difficulties since the beginning of 2017 and had been living separately for several months. He

was only seeing the children once a week, and was providing $100 cash payment per week to

help support the children. Mr. Saban resided in New Britain, Connecticut, where his family still

resides, and Plaintiff ELIZABETH V. MEJIA was appointed the personal representative of his

estate by a Connecticut Probate Court.

     5.    The present cash value of the final offer by all parties and their respective

insurers, which was accepted by the Plaintiff, is **$2,800,000.00.** A portion of the proceeds of the

settlement will be paid over time through a Structured Settlement, the specific terms of which are

set forth below. A copy of the settlement agreement is annexed hereto as **Exhibit B**). Pursuant to

the terms of this agreement, Defendants O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC

will pay **$2,500,000.00;** Third-Party Defendants SESI CONSULTING ENGINEERS, P.C. and

KENNETH J. QUAZZA, P.E. will pay **$180,000.00;** Third-Party Defendants NEW

GENERATIONS MASONRY and MG COMMERCIAL CONCRETE will pay a total of

**$100,000.00,** which sum shall be paid on their behalf by PENN-AMERICA INSURANCE

COMPANY; and Third-Party Defendant BONDED CONCRETE, INC. will pay **$20,000.00.**

     6.    In considering whether to accept the settlement offer, I evaluated the strengths

and weaknesses of the liability and damages claims, and the likelihood of success at trial. From the discovery conducted both in this case and the OSHRC matter, the liability case against the Defendants was clearly a strong one, and there was a high probability that a jury trial would result in a verdict in favor of the Plaintiff on liability. However, the damages which could be proven and a jury's willingness to award those damages was far less certain.

7.       Under New York law, the Plaintiff could recover damages for pecuniary loss to the beneficiaries (E.P.T.L. §5-4.3) and the conscious pain and suffering sustained by the decedent prior to his death. As noted above, the decedent was an undocumented immigrant, had never filed a tax return, had no documented work history, and was only working on the One Dutchess Avenue construction job for one day when the accident occurred. As such, there was a substantial risk that an expert economist's projection of loss of financial support to the family would have been excluded by the Court as speculative or that a jury would have rejected such a claim. In addition, Ms. Mejia's testimony that she was living apart from Mr. Saban and that her marriage was troubled substantially negated her claim for pecuniary loss based on Mr. Saban's services to her as a husband. In evaluating these claims for settlement purposes, I could not attach great value to them, given their inherent risks and difficulties.

8.       The remaining damages claims were those for the pecuniary loss to Mr. Saban's two children arising from the absence of their father's nurture, care and guidance and his conscious pain and suffering prior to his death. The maximum results in cases that were tried to verdict and appealed for an infant's the loss of nurture, care and guidance of a parent were in a

range of approximately $1,000,000.00 to $1,500,000 per child. See, e.g., Adderley v. City of New York, 304 A.D.2d 485 (1st Dept., 2003); Paccione v. Greenberg, 256 A.D.2d 559 (2d.Dept., 1998); Grevelding v. State of New York, 132 A.D.3d 1332 (4th Dept, 2015). In evaluating these claims for settlement purposes, I considered these top sustained verdicts, as well as the risk of receiving less because of testimony that Mr. Saban was not living in the same household as his children for some time prior to his death, and saw them only once a week.

       9.     As for the value of the conscious pain and suffering in the case, Plaintiff contended that there was evidence (described above) that Mr. Saban was aware of his impending death for 2-4 seconds, and Plaintiff's expert pathologist opined that he was conscious and lived for an additional 3-5 seconds after the impact of the blocks and dirt. Both of these claims, particularly the "post-impact" pain and suffering claim, were vigorously opposed by Defendants. In evaluating this claim for settlement purposes, I again considered the maximum verdicts sustained by the New York State Appellate Courts. Comparable cases involving relatively brief periods of pain and suffering such as the one in this case, that were tried to verdict and appealed, demonstrated a range of sustainable recoveries in the range of $300,000.00 to $400,000.00. See, e.g., Oates v. NYCTA 138 AD3d 470 (1st Dept, 2016); Segal v. City of New York, 66 AD3d 865 (2d Dept., 2009).

       10.    Given these maximum verdict values in tried and appealed cases with regard to the claims for loss of parental nurture, care and guidance and conscious pain and suffering, and the difficulties inherent in the remaining claims of pecuniary loss, I believe that the settlement of

**$2,800,000.00** is an exceptional result in this case.

11.     For all of the foregoing reasons we recommended, and the Plaintiff has

accepted, the offer of **$2,500,000.00** to settle this case against Defendants O'NEILL

GROUP-DUTTON, LLC and ONEKEY, LLC; the offer of **$180,000.00** to settle this case

against Third-Party Defendants SESI CONSULTING ENGINEERS, P.C. and KENNETH J.

QUAZZA, P.E.; the offer of **$100,000.00** to settle this case against Third-Party Defendants NEW

GENERATIONS MASONRY and MG COMMERCIAL CONCRETE by PENN-AMERICA

INSURANCE COMPANY; and the offer of **$20,000.00** to settle this case against Third-Party

Defendant BONDED CONCRETE, INC., for a total of **$2,800,000.00**.

*Attorney's Fee, Disbursements and Liens*

12.     Local Civil Rule 83.2(b)(2) states that "[t]he Court shall approve an attorney's fee

only upon application in accordance with the provisions of the New York State statutes and

rules."   As such, we request that this Court approve the attorney's fee in this case in accordance

with 22 NYCRR 806.27(b), Schedule B, which allows for attorney compensation in a contingent

fee case of one-third (33 1/3%) of the gross sum recovered plus proper disbursements.

13.     Our firm was retained by the Plaintiff on a one-third (33 1/3%) contingent fee

basis on or about September 25, 2017, for the purpose of pursuing this wrongful death action in

New York. A retainer statement was properly filed with the New York Office of Court

Administration and assigned number 4099393 (see copies of the retainer agreement and retainer

statements annexed hereto as **Exhibit D**).

14.     My firm provided extensive and substantial legal services and representation to

the Plaintiff in the matter before this Court. For several months prior to commencement of this

action, we conducted an investigation, with the assistance of an engineering expert, in order to learn and understand more about the facts and nature of the occurrence. Following this investigation, an action was commenced in this Court on July 18, 2018 against Defendants, O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC, alleging general negligence, violations of New York's Labor Law, and seeking damages for compensatory and punitive damages.   On September 6, 2018, Defendants impleaded Third-Party Defendants, SESI CONSULTING ENGINEERS, P.C., KENNETH J. QUAZZA, P.E., NEW GENERATIONS MASONRY, MG COMMERCIAL CONCRETE, BONDED CONCRETE, INC. We prepared initial disclosures pursuant to FRCP Rule 26, propounded and responded to interrogatories and extensive document demands from the Defendants and Third-Party Defendants, and participated in the deposition of the Plaintiff and the depositions of a number of the Third-Party Defendants. We also actively participated as Defendants in the companion declaratory judgment action brought by Penn America Insurance Company with regard to its obligations to defend and indemnify third-party defendants MG Commercial Concrete and New Generations Masonry. We appeared at a total of 13 conferences in this action and the Penn America declaratory judgment action. In addition, we obtained and reviewed voluminous discovery and depositions in the case brought by the U.S. Department of Labor against ONEKEY before the OSHRC, and we monitored the trial of that case in both New York and Maryland.

15.     In addition to the investigation, pleadings and discovery, we retained and worked with an expert pathologist to provide an opinion as to whether Mr. Saban endured both pre-impact and post-impact  conscious pain and suffering, and we retained an expert economist as part of an effort to prove economic losses to the family.

16.     We also made a complex and highly contested motion regarding the choice of law

to be applied, in which we asked this Court to find that Connecticut law, not New York law, applied to the determination of damages to which the Plaintiffs was entitled.

17.     Finally, we conducted extensive negotiations over the course of four months, including a mediation held on March 6, 2020, which eventually resulted in the settlement of this case for $2,800,000. In addition, we negotiated a lien against the Plaintiff's recovery by Guard Insurance Company, reducing it from $59,354.73 to **$39,569.82**.

18.     I personally provided all of the legal representation before this Court, and performed nearly all of the legal services rendered on behalf of the Plaintiff. I am the partner in charge of Plaintiff's litigation in my firm, and I have been admitted to practice law in New York for 35 years and in the Southern and Eastern Districts of New York for 33 years, and am in good standing in all of those Courts. I have extensive experience in construction accident cases such as this one, and have litigated numerous such cases brought pursuant to New York's Labor Law.

19.     I believe that these offers are the result of the level of effort expended by my firm and by me in building a case against the Defendants and Third-Party Defendants under these circumstances.   As set forth above, comparison to the results in fully tried and appealed cases demonstrates that this result is at or near the highest level of sustainability.   Consequently, I respectfully request that the Court approve attorneys' fees of **$933,333.33** pursuant to 22 NYCRR 806.27(b) SCHEDULE B and the contingent retainer agreement between the Plaintiff and my firm, which provides for a fee of one third (33 1/3%) of the **$2,800,000.00** recovery obtained from the Defendants and Third-Party Defendants.

20.     In addition, I request that the Court approve our disbursements in the sum of **$23,585.38**, as reflected in the attached schedule (see **Exhibit E**).

21.     Further, I request that the Court approve the payment of Workers' Compensation

lien held by BERKSHIRE HATHAWAY GUARD in the sum of **$39,569.82** (see **Exhibit C**).

*Apportionment of the Net Settlement Proceeds*

22.    Plaintiff is the personal representative of the Estate of Maximiliano Saban, who died intestate. This lawsuit is the only asset of the Estate. Since the Estate was established in Connecticut, the proceeds of this lawsuit are subject to distribution pursuant to Connecticut General Statutes § 45a-437. That statute provides that the surviving spouse receives the first one hundred thousand dollars ($100,000.00) plus one-half of the balance of the intestate estate and that the remaining balance is divided equally among the decedent's dependents.

23.    Based on the liens, attorney's fee and disbursements set forth above, the net recovery to the estate would be **$1,803,511.47**. In accordance with the aforesaid statute, ELIZABETH V. MEJIA would therefore be entitled to **$951,755.73**, the Infant GREYSI SABAN is entitled to **$425,877.87** and the Infant NATHALY SABAN VICENTE would be entitled to **$425,877.87**.

24.    However, in lieu of cash payments, ELIZABETH V. MEJIA has elected to have a portion of her recovery, and the entirety of her children's recovery, paid over time through the use of a Structured Settlement Annuity. As such, I respectfully request that the Court approve the proposed distribution of the settlement proceeds as follows:

a)    to ELIZABETH V. MEJIA as and for her share as spouse of the decedent the sum of **$501,755.73**; and

b)    to MetLife Assignment Company, the sum of **$450,000.00** to fund a

structured settlement annuity for ELIZABETH V. MEJIA.   The future payments shall be as follows:

- $1,958.95, payable monthly, guaranteed for 12 years, beginning on January 1, 2021, with the last guaranteed payment on December 1, 2032;
- $250,000.00 payable at age 40 on October 2, 2032;

Annexed hereto are **Exhibit F** are the following documents relating to the above structured settlement annuity: Structured Settlement Affidavit, Proposed Settlement Agreement, Proposed Assignment Agreement, Proposed Sample Annuity Contract, Proposed Guaranty Agreement, and Rejected Alternative and/or competing proposals.

      c)     to MetLife Assignment Company, the sum of **$425,000.00** to fund a structured settlement annuity for GREYSI SABAN.   The future payments shall be as follows:

- $25,000.00 payable annually, guaranteed for 4 years, beginning on August 18, 2028, with the last guaranteed payment on August 18, 2031;
- $1,257.16 payable monthly beginning on August 18, 2032 for life with 30 years guaranteed;

Annexed hereto are **Exhibit F** are the following documents relating to the above structured settlement annuity: Structured Settlement Affidavit, Proposed Settlement Agreement, Proposed Assignment Agreement, Proposed Sample Annuity Contract, Proposed Guaranty Agreement, and Rejected Alternative and/or competing proposals.

d)      to ELIZABETH V. MEJIA, as mother and natural guardian of GREYSI

SABAN, an Infant, jointly with an officer of Achieve Financial Credit Union located at 450

West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, the sum of

**$877.87**, to be deposited in the said bank in an account, or accounts, yielding the highest rate of

interest available, in the name of the and natural guardian, in trust for the Infant and for the sole

use and benefit of the Infant; and that the time deposit accounts and certificate of deposit

accounts shall be continuously renewed at maturity at the highest rate of interest then available,

but the date of maturity thereof shall not extend beyond the date upon which the Infant attains

the age of eighteen (18) years; and that when no such time deposit or certificate of deposit

account is available, then the accumulated funds shall be placed in the bank's insured money

market account; and that no withdrawals shall be made from said account, or accounts, before

the Infant reaches the age of eighteen (18) years, except upon further order of this Court;

e)      to MetLife Assignment Company, the sum of **$425,000.00** to fund a

structured settlement annuity for NATHALY SABAN VICENTE.   The future payments shall be

as follows:

- $25,000.00 payable annually, guaranteed for 4 years, beginning on
  August 28, 2032, with the last guaranteed payment on August 28,
  2035;

- $1,459.35 payable monthly beginning on August 28, 2036 for life with
  30 years guaranteed;

Annexed hereto are **Exhibit F** are the following documents relating to the above

structured settlement annuity: Structured Settlement Affidavit, Proposed Settlement Agreement, Proposed Assignment Agreement, Proposed Sample Annuity Contract, Proposed Guaranty Agreement, and Rejected Alternative and/or competing proposals.

      f)    to ELIZABETH V. MEJIA, as mother and natural guardian of NATHALY SABAN VICENTE, an Infant, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, the sum of **$877.87**, jointly with an officer of Achieve Financial Credit Union located at 450 West Main Street, New Britain, CT 06052, telephone number (860) 828-2790, to be deposited in the said bank in an account, or accounts, yielding the highest rate of interest available, in the name of the and natural guardian, in trust for the Infant and for the sole use and benefit of the Infant; and that the time deposit accounts and certificate of deposit accounts shall be continuously renewed at maturity at the highest rate of interest then available, but the date of maturity thereof shall not extend beyond the date upon which the Infant attains the age of eighteen (18) years; and that when no such time deposit or certificate of deposit account is available, then the accumulated funds shall be placed in the bank's insured money market account; and that no withdrawals shall be made from said account, or accounts, before the Infant reaches the age of eighteen (18) years, except upon further order of this Court;

      g)    to BAMUNDO ZWAL & SCHERMERHORN, LLP as and for their disbursements the sum of **$23,585.38;**

      h)    to BAMUNDO ZWAL & SCHERMERHORN, LLP as and for their

attorneys' fee the sum of **$933,333.33**;

        i)     to BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES

in full satisfaction of Workers' Compensation lien the sum of **$39,569.82.**

    25.     Neither my firm nor I have not become concerned in this action at the request of

the defendants or their attorneys or representatives, and no compensation has been or will be

received by deponent from defendants or their attorneys or representatives.   Any compensation

to be received by way of fees herein is to be paid out of the proceeds of the proposed settlement

and not otherwise.   My firm has a written retainer with the administrator herein providing for a

fee based on negligence, which your affirmant submits is fair and reasonable in light of all of the

facts and circumstances.

    26.     We have inquired of the Plaintiff and are satisfied that the only claims

against the proceeds of this settlement that have been filed with the administrator are those

shown in these papers.

    WHEREFORE, your affirmant respectfully requests that pursuant to Local Civil Rule

83.2(b)(2) this Court approve the terms of the settlement of this action approving the settlement

of the action against the Defendants O'NEILL GROUP-DUTTON, LLC and ONEKEY, LLC for

a sum of **$2,500,000.00;** Third-Party Defendants SESI CONSULTING ENGINEERS, P.C. and

KENNETH J. QUAZZA, P.E. for a sum of **$180,000.00;** Third-Party Defendants NEW

GENERATIONS MASONRY and MG COMMERCIAL CONCRETE by PENN-AMERICA

INSURANCE COMPANY for a sum of **$100,000.00;** and Third-Party Defendant BONDED

CONCRETE, INC. for a sum of **$20,000.00,** for a total of **$2,800,000.00;** apportioning the

settlement as set forth above, approving the payment of counsel fees and disbursements as well

as liens, and dismissing this action against the Defendants and Third-Party Defendants.

Dated: New York, New York
July 29____, 2020

Michael C. Zwal (4792)
**BAMUNDO ZWAL & SCHERMERHORN, LLP**
Attorneys for Plaintiff
111 John Street, Suite 1100
New York, New York 10038
(212) 608-8840